**Alexander Sandor MOLNAR, Plaintiff-Appellee Cross-Appellant,**

v.

**EBASCO CONSTRUCTORS, INC., Defendant-Appellant Cross-Appellee.**

No. 92–7022.

United States Court of Appeals, Fifth Circuit.

March 23, 1993.

Rehearing Denied April 21, 1993.

Raymond L. Kalmans, Cherry Kay Bounds, Neel, Hooper & Kalmans, P.C., Houston, TX, for appellant.

Anthony P. Griffin, Griffin & Assoc., Galveston, TX, for appellee.

Before DUHÉ, BARKSDALE, Circuit Judges and HUNTER,[1] Senior District Judge.

DUHÉ, Circuit Judge:

Ebasco Constructors, Inc. ("Ebasco") appeals from a judgment entered on a jury verdict finding that Alexander Molnar's age was a determining factor in Ebasco's decision to terminate his employment. Because we conclude that the evidence was insufficient to support this finding, we reverse.

## Background

### I. Procedural History

This suit arose out of Ebasco's termination of Alexander Molnar ("Molnar"). Molnar alleged that his age was a determining factor in his layoff and sued under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. After a jury trial, Molnar received a favorable verdict. Molnar was awarded back wages and employee benefits in the amount of $96,000 with prejudgment interest. Based on the jury finding of willfulness, the court liquidated the award of back pay. The judgment also awarded $50,000 as front pay and $98,120 in attorney fees. Defendant appeals the finding of liability and damages, and plaintiff cross-appeals on the issue of attorney's fees.

### II. Factual Background

Molnar was born and educated in Hungary and later immigrated to the United States. In 1980, he was hired by Ebasco as a structural designer/engineer in New

---

**1.** Senior District Judge of the Western District of Louisiana, sitting by designation.

York. In 1985, he was transferred to the South Texas Nuclear Power Plant (STNP) to work as a scheduler in the Ebasco HVAC group. He eventually transferred to the Comanche Peak Electric Nuclear Steam Generating Plant (CP) where he was working for Ebasco when he was terminated.

Ebasco was working at CP under a contract with Texas Utilities, and in January 1988, Texas Utilities ordered Ebasco to reduce its manpower on the project by 20%. Molnar was employed in Ebasco's HVAC construction engineering group working on the CP contract. This group had 67 employees whose average age was 39.85 years. Ten of those 67 were removed from the staff in accordance with the reduction in force (RIF). Molnar was one of the ten. The average age of the 57 employees remaining on the contract increased to 40.33 years, and the average age of the 10 released employees was 37.1 years.

In choosing which employees to release, Ebasco supervisors prepared a list ranking each of the subordinate employees by the following criteria: performance, skills, capabilities, and present and upcoming jobs. These rankings were reviewed by two additional supervisors, who further evaluated the employees in terms of attendance, necessity of supervision, adaptability and flexibility, dependability and reliability, work attitude, communication skills, technical knowledge and Ebasco experience. These employees were not considered unacceptable, but were released per Texas Utilities' order.

Molnar's supervisor ranked him at the bottom of the list for his group. Ebasco contends that this low ranking was based on Molnar's poor interpersonal skills and his lack of proper skill accreditation. In previous evaluations, Molnar, although rated satisfactory overall, was noted as having problems with his oral and written communication skills. He was also critiqued as not being a "team player."

The employee ranking list was further reviewed by the plant managers and then sent to the personnel office to ensure EEO compliance. Of the ten employees released

with Molnar, only Molnar and one other employee were over 40 years old.

Ebasco attempted to secure other employment for the employees released. Some of them were sent back to their home department or placed in another department. One employee was hired by Texas Utilities. Molnar was unable to be placed by his home department and was ultimately laid off. Only one other employee of these 10 was ultimately laid off, and he was under age 40.

*Discussion*

Ebasco challenges the verdict in favor of Molnar on several grounds. In addition to challenging the denial of its motion for judgment n.o.v., Ebasco challenges several of the district court's evidentiary rulings, the jury's finding of willfulness, and the jury's calculation of damages. Because we find that the evidence is insufficient to support the jury verdict, we do not address Ebasco's other points of error. Likewise, Molnar's cross-appeal challenging the calculation of attorney's fees is not considered.

■ In reviewing the denial of a motion for judgment n.o.v., the court must determine whether the record contains evidence upon which a reasonable trier of fact could conclude as the jury did. *Uffelman v. Lone Star Steel Co.*, 863 F.2d 404, 407 (5th Cir.1989), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989).

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment n.o.v.] is proper. On the other hand, if ... reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [j.n.o.v.] should be denied, and the case submitted to the jury.... A mere scintilla is insufficient to present a question for the jury.... However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.... [T]he

Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion [for judgment n.o.v.].

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969). *See also Turner v. North American Rubber, Inc.,* 979 F.2d 55 (5th Cir.1992).

■■■ In an age discrimination case, the plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated. In the absence of direct evidence of discrimination, the plaintiff must make out a prima facie case in order to establish a rebuttable presumption of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In a reduction in force situation, the plaintiff must show (1) that he is within the group of persons protected under the ADEA and that he was adversely affected by the employer's decision; (2) that he was qualified to assume another position at the time of discharge; and (3) from evidence, circumstantial or direct, that a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision. *Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633, 642 (5th Cir.1985). The burden of production then shifts to the defendant to articulate a legitimate reason for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff then bears the burden of showing that these reasons were pretextual. *Id.* at 804, 93 S.Ct. at 1825. A plaintiff may demonstrate pretext directly by showing that a discriminatory motive more likely motivated the employer or indirectly by showing that the employer's explanation is unworthy of credence. *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 813 (5th Cir.1991).

■■ When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant. *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 122–23 (5th Cir.1992). We focus our inquiry on whether the record contains evidence upon which a reasonable trier of fact could have concluded as the jury did. *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 564 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984) (citations omitted). With these principles in mind, we proceed to analyze the evidence in this case.

■■ Ebasco argues that it is entitled to judgment notwithstanding the verdict for two reasons: (1) Molnar has not offered evidence sufficient to show that the discharge was due to age; and (2) Molnar's evidence was insufficient as a matter of law to establish that Ebasco's articulated reasons were pretextual. We agree.

Molnar's evidence consisted of the following: He was over age 40 when terminated. Of the ten persons chosen for the RIF, eight of them were able to secure employment in other departments of Ebasco. One of those eight persons, however, was over age 40, and the other person terminated with Molnar was under age 40. Additionally, the average age of the remaining HVAC group at CP increased after the RIF. Molnar also contends that Ebasco did not follow established procedure for ranking its employees. He relies on a ranking form that he found in a copy machine at CP. Ebasco established, however, that this particular ranking form had been mandated by its client for its STNP jobsite, and was not in use at the CP jobsite.

Molnar testified to his subjective belief that he was terminated because of age and his belief that Ebasco was trying to prevent him from vesting in his pension plan. He also claimed that an unidentified person in Ebasco's headquarters in New York told him that his claims were hard to prove.[2]

---

**2.** From Molnar's testimony, whether he is also contending that this person agreed that he had been discriminated against is not clear. Molnar

stated at trial "I was told Ebasco person up in New York, I mean, office in the World Trade

Molnar also claims that he was clearly better qualified for the job than the employees who were retained or eventually rehired. No objective evidence, however, was presented by Molnar to substantiate these claims, and the record indicates that several other released employees had substantial HVAC experience.

Finally, Molnar claims that his communication skills were not a problem, even though several of his job evaluations stated the contrary.[3] He introduced testimony of another Ebasco employee from Hungary. This witness testified that he had never had communication problems, thus implying that Molnar's communication problems were merely a pretext. Based on the foregoing evidence, Molnar concluded that the reduction in force was merely a sham to get rid of him because of his age. We disagree and do not believe that this evidence is sufficient under the *Boeing* standard to support the jury's verdict.

■ In sum, the evidence shows that Ebasco involuntarily had to reduce its workforce at CP. Molnar was one of ten persons released. Molnar was not able to be placed into another position at that time and was ultimately laid off, as was another employee who was under age 40. Molnar believed that he was terminated because of age, and believed that he was better qualified for the job than those employees retained. Self-serving and speculative testimony, however, is subject to intense scrutiny. *Elliott,* 714 F.2d at 564. Specifically, testimony by an employee regarding his subjective belief that his termination resulted from age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his release. *Houser v. Sears, Roebuck & Co.,* 627 F.2d 756 (5th Cir.1980). Even though Molnar was not required to produce direct proof of age discrimination, his indirect proof is barely enough to establish a prima facie case, and

certainly not enough to rebut Ebasco's legitimate reasons for the termination. *See Sherrod v. Sears, Roebuck & Co.,* 785 F.2d 1312, 1315–16 (5th Cir.1986); *Neely v. Delta Brick & Tile Co., Inc.,* 817 F.2d 1224 (5th Cir.1987).

Accordingly, we reverse the judgment of the district court, and enter judgment for Ebasco Constructors, Inc.

REVERSED and RENDERED.

---

Center I was explained I was discriminated. He was telling me it's hard to prove it."

**3.** Molnar refused to sign a negative evaluation given by his supervisor, Steve Bodnarchuk, in 1986. Apparently, this incident fostered animosity between the two men. Bodnarchuk, along with another supervisor, ultimately agreed to Molnar's inclusion in the RIF list. Personal animosity between Molnar and Bodnarchuk, however, does not translate into age discrimination.