**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-8628

---

ENRIQUE A. ARMENDARIZ,

Plaintiff-Appellee,
Cross-Appellant,

VERSUS

THE PINKERTON TOBACCO COMPANY,

Defendant-Appellant,
Cross Appellee.

---

Appeals from the United States District Court
for the Western District of Texas

---

(June 28, 1995)

Before JONES and DeMOSS, Circuit Judge and TRIMBLE[1], District
Judge.

DeMOSS, Circuit Judge:

In March 1991, Pinkerton Tobacco Company made a decision to
dissolve its Denver sales division. As a result, several field
sales personnel, including 53 year-old Enrique Armendariz, were
discharged.  Pinkerton claimed that Armendariz was discharged
both because his job was being eliminated and the division he
worked in was being rearranged.  Armendariz claimed that he was

---

[1]District Judge for the Western District of Louisiana,
sitting by designation.

discharged because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 - 34 (West 1985).

At trial, the jury: (1) found that age was a determining factor in Pinkerton's decision to discharge Armendariz; (2) awarded $50,000 in back pay and wages; (3) declined to award damages for lost future wages and benefits; and (4) found that Pinkerton's decision to terminate Armendariz constituted willful discrimination. After the verdict, Pinkerton renewed its previous motion for judgment as a matter of law or in the alternative for new trial. Armendariz moved to amend the judgment, or in the alternative for new trial, challenging the district court's failure to award other equitable relief, such as front pay or reinstatement, and the district court's failure to award liquidated damages based on the jury's willfulness finding. The district court denied both motions and entered judgment for $50,000 plus costs and attorney's fees. The district court declined to award liquidated damages based on its judgment that the jury's determination of willfulness was not supported by the evidence.

Pinkerton Tobacco Company appeals from the jury findings that its decision to discharge Enrique Armendariz amounted to willful discrimination on the basis of age and from the district court's denial of its motion for judgment as a matter of law. Armendariz cross-appeals from the district court's failure to award liquidated damages or other equitable relief. Because we

2

find insufficient evidence to support the jury's verdict, we REVERSE and RENDER judgment in favor of Pinkerton that plaintiff Armendariz take nothing.

## I.   BACKGROUND

Enrique Armendariz worked for Pinkerton Tobacco Company for about eight and one-half years selling smokeless tobacco and pipe tobacco products.[2]  In March 1991, at age 53, Armendariz was discharged.  Pinkerton claims that he was discharged because his job was being eliminated.  Armendariz claims he was discharged because of his age.

Pinkerton was organized into five regions which were subdivided into 29 divisions.  Armendariz worked in the Denver division which was in the Dallas region.  In March 1991 there were six field sales representatives in the Denver division: Ardrey, age 35; Allison, age 34; Brown, age 43; Tucker, age 41; Boyd, age 48 and Armendariz, age 53.  Each salesperson serviced a distinct geographic territory near his or her home.  Armendariz lived in El Paso and his territory was composed of a large sparsely-populated area that included southwest Texas and Southern New Mexico.

Whenever the cost of sales in a given territory exceeded 10 cents per dollar, Pinkerton would consider converting the direct sales area into one serviced by an independent broker.  It was undisputed that in 1990, the Denver division's selling costs, and

---

[2]Armendariz was employed in 1982 by Liggit & Myers, Pinkerton's predecessor.  When Pinkerton split off from Liggit and Myers in 1984, it retained Armendariz' services.

Armendariz' selling costs in particular, far exceeded both the national average for the company and the target maximum of 10 cents per dollar of sales.[3]  Therefore, Dallas regional manager Darrell Peters asked Denver division manager Jerry Salentine to suggest ways to reduce those costs.  Salentine responded that costs could not be significantly reduced because they were attributable to the large geographic area and relatively sparse population of the Denver division.  After meeting with all Denver division sales personnel and working individual routes with the majority of the sales personnel, Peters recommended to Pinkerton management that the Denver division be dissolved.

In March 1991 Pinkerton decided to dissolve the Denver division.  The plan called for elimination of the Division manager's position, conversion of the two highest cost territories (Armendariz' and Brown's) to service by independent brokers and reassignment of the remaining four viable territories to existing adjacent divisions.  Thus, division manager Salentine and salesmen Brown and Armendariz were discharged.  The four remaining salespeople were reassigned to managers in other divisions but continued to work the same territories.  Independent brokers assumed all of Brown's territory and the vast majority, both by geographic area and population, of Armendariz'

---

[3]Selling costs nationwide in Pinkerton's 29 divisions averaged 8 cents per dollar of sales and 43 cents per pound of product sold.  Selling costs in the Denver division averaged 17.9 cents per dollar of sales and $1.01 per pound of product sold. Armendariz selling costs were 32 cents per dollar of sales and $1.95 per pound of product sold.

4

territory.  Five eastern counties from Armendariz' territory were assumed by Jim Fowler, a 34 year-old Pinkerton salesman who had been servicing adjacent parts of Texas for about one year. Pinkerton did not consider reassigning Armendariz to a different division in his existing territory and subsequently refused to hire him for positions open in other territories.

## II. STANDARD OF REVIEW

Pinkerton moved for judgment as a matter of law both before and after the verdict.  Therefore we review the district court's denial of Pinkerton's motion for judgment as a matter of law using the standard enunciated in  Boeing Company v. Shipman, 411 F.2d 365, 374-75 (1969) (en banc).  Under Boeing, judgment as a matter of law is appropriate if the facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not have concluded that the ADEA was violated.  411 F.2d at 374; Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 117-18 (5th Cir. 1993); Little v. Republic Refining Co., Ltd., 924 F.2d 93, 95 (5th Cir. 1991).  A mere scintilla of evidence is insufficient to present a question for the jury. Boeing, 411 F.2d at 374.  There must be a conflict in substantial evidence to create a jury question. Id. at 375.  Applying Boeing to this case, the district court's judgment should be reversed only if the facts and accompanying inferences would not permit reasonable people to conclude that Pinkerton discharged Armendariz because of his age.

## III.  ELEMENTS OF PROOF UNDER THE ADEA

5

The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). To prove a violation, a plaintiff must prove intentional discrimination. Absent direct evidence, the plaintiff can create a rebuttable presumption of discrimination by presenting a prima facie case. Molnar, 986 F.2d at 118. A plaintiff demonstrates a prima facie case by showing that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993). Once a plaintiff demonstrates a prima facie case, the burden of production shifts to the defendant to establish a legitimate, nondiscriminatory reason for its decision. Id. Once defendant meets this burden, the presumption dissolves and the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is but a pretext for age discrimination. St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993). When, as here, the case has been fully tried on the merits, the adequacy of the showing at any particular stage of this evidentiary process is unimportant. Molnar, 986 F. 2d at 118. Instead, the Court must focus on whether a reasonable trier of fact could have concluded as the jury did. Id. In an ADEA case, the critical test is that the plaintiff must prove that age "actually played a role in" and "had a determinative influence

6

on" the employer's decision-making process. <u>Hazen Paper Co. v. Biggins</u>, 118 S. Ct. 1701, 1706 (1993). With these principles in mind, we review the evidence presented in this case.

## IV. THE EVIDENCE

Pinkerton argues that Armendariz' evidence neither demonstrated a prima facie case of discrimination nor created a jury issue related to whether Pinkerton's articulated reason for Armendariz' discharge was in fact a pretext for unlawful discrimination.[4] We agree.

## A. The Prima Facie Case

The first two elements of Armendariz' prima facie case , that he was within the protected age class and that he was discharged, were not disputed. Further, there was substantial evidence at trial from all sides that Armendariz had been a loyal and competent employee who was qualified for the position that was being eliminated. The parties disagree, however, about whether this is a "replacement" or a "job elimination" case and, consequently, about which version of the final prong of the prima facie case applies. We cannot agree with Armendariz' contention that this is a "replacement" case. It is true that the five most

---

[4]Although our concern is not with the sufficiency of the evidence at any particular stage but with the sufficiency of the evidence in the case as a whole to establish intentional discrimination, the parties presented their evidence below and their arguments on appeal with reference to the <u>McDonnell Douglas</u> procedural framework. We therefore employ that format to respond to their various arguments. <u>See</u>, <u>e.g.</u>, <u>Elliot v. Group Medical & Surgical Svc.</u>, 714 F.2d 556 (5th Cir. 1983), <u>cert. denied</u>, 467 U.S. 1215 (1984) (analyzing the sufficiency of the evidence with reference to the <u>McDonnell Douglas</u> format).

eastern counties of Armendariz' territory were assumed by existing Pinkerton sales representative Jim Fowler (34 years-old) who had been servicing adjacent areas out of the Abilene division for about one year.  The evidence established, however, that the vast majority of Armendariz' territory, both in terms of geographic area and population, was assumed by an independent broker.[5]  The fact that a small percentage of Armendariz' work was assumed by another Pinkerton employee (at no increase in pay) does not change the fact that Armendariz' position itself was eliminated.

Pinkerton correctly characterizes Armendariz' discharge as a "reduction in force" or "job elimination," in which case Armendariz was required to present evidence that would allow the jury to conclude that Pinkerton did not treat age as a neutral factor in its decision as to whether to retain or relocate Armendariz.  Amburgey v. Cohart Refractories Corp., 936 F.2d 805, 812 (5th Cir. 1991).  Armendariz responded to that burden by alleging that Pinkerton did not relocate him or rehire him for positions that subsequently became open in other territories.  Apparently this was offered both as to Armendariz prima facie case and as circumstantial evidence that age, in addition to purely economic factors, motivated Pinkerton's decision.  The evidence is not probative on either point.  Armendariz did not

_____

[5]Armendariz did not present any evidence to substantiate his claim that the area assumed by Fowler included the most populous and therefore most profitable portion of his territory. Pinkerton produced evidence that the assumed area constituted only fourteen percent, by population, of Armendariz' territory.

8

allege or offer proof that there were openings, even in other territories, at the time he was terminated. Pinkerton testified that there were none, and it was undisputed that Pinkerton did not relocate any field sales personnel when the Denver office closed. Further, Pinkerton produced evidence that it has a longstanding policy against relocating its field sales personnel both because of the high costs involved and because they prefer salesmen who have established relationships within their assigned geographic territories. Armendariz offered no evidence that Pinkerton had ever transferred a field sales representative, either before or after Armendariz' termination. Finally, the fact that Pinkerton did not offer Armendariz subsequently available positions in other cities within the Dallas region is not probative, at least in this case, on the issue of whether Pinkerton discharged Armendariz because of his age.

### B. Pinkerton's Legitimate Nondiscriminatory Reason

Pinkerton claimed at trial that it reluctantly discharged Armendariz, whom it considered a competent salesman, as part of a job elimination arising from dissolution of the Denver division. Job elimination or office consolidation is a sufficient nondiscriminatory reason for discharge under the ADEA. Bodenheimer, 5 F.3d at 957-58; Hanchey v. Energas Co., 925 F.2d 96, 98 (5th Cir. 1990).

Pinkerton claimed that it traditionally considered dissolving a direct sales area and converting it to independent brokers when the selling cost per dollar exceeded 10 cents. At

the time that Armendariz was discharged the Denver division's selling cost per dollar was 17.9 cents, significantly higher than both the 10 cent maximum benchmark and the 8 cent company-wide average. In addition, the Denver division's selling cost per pound was $ 1.01, higher than all but one of the 29 divisions and also substantially higher than the company-wide average of 43 cents per pound. Armendariz and Brown had the highest expenses and the lowest sales volume of any of the six Denver division salesmen, by a substantial margin.[6] The bottom line, Pinkerton states, was that the Denver division could be more economically serviced.

Peters, the Dallas regional manager, cautioned Denver division manager, Jerry Salentine, in 1990 that Denver would have to find ways to reduce its selling costs. Salentine responded that this could not be done. In the fall of 1990, at least two meetings were held, with Armendariz in attendance, in which Peters advised Denver division sales personnel that the high costs were unacceptable. During that time Peters also worked individual routes with the majority of the Denver division sales representatives, including Armendariz, to determine whether costs

---

[6]Selling costs for individual Denver division field sales representatives were as follows:

| Salesperson | Total Sales | Sales Cost/Pound | Sales Cost/Dollar |
|---|---|---|---|
| Ardrey | $866,306.00 | $ .3226 | $ .0551 |
| Tucker | $650,488.00 | $ .3952 | $ .0703 |
| Boyd | $522,035.00 | $ .4873 | $ .0868 |
| Allison | $230,970.00 | $1.3230 | $ .2255 |
| Armendariz | $166,594.00 | $1.9577 | $ .3279 |
| Brown | $100,439.00 | $3.6908 | $ .5996 |

10

could be reduced.  Finally, in early 1991 Peters concluded that Salentine was right and proposed to Pinkerton management the plan that was eventually approved for reducing marketing costs in the geographic area that made up the Denver division.

The plan proposed by Peters called for elimination of the Denver division, conversion of the two highest cost territories, Brown's and Armendariz', to independent broker sales and reassignment of the remaining four territories to other divisions.  After the plan was approved by Peter's superiors in Pinkerton management,  Salentine, Brown and Armendariz were terminated and the remaining four salesmen were reassigned to new managers but continued servicing their home territories.  By converting Armendariz territory to independent broker service, Pinkerton reduced the cost of selling in Armendariz' territory from $ 55,000 in 1990 to $ 24,000 in the year before trial.

## C. Evidence that Pinkerton's Reason was a Pretext for Unlawful Discrimination

Armendariz did not attack at trial, and does not attack on appeal, the objective truth or accuracy of the financial figures advanced by Pinkerton to justify its decision.  To demonstrate that Pinkerton's reason was a pretext for unlawful discrimination, Armendariz offers evidence from which he argues the jury could have found that: (1) Pinkerton's reason lacked veracity; and (2) that unlawful discrimination was Pinkerton's real motivation.

Armendariz argues the jury could have found that Pinkerton's asserted reason lacked veracity from evidence that: (1) Peters was not candid about the fact Armendariz' job was in jeopardy when

11

asked by Armendariz in the fall of 1990; (2) Peters testimony that Armendariz was eligible for rehire conflicted with the termination report which indicated that Armendariz would not be considered for rehire; and (3) Peters inability to testify at trial that Pinkerton was loosing money on the Denver division as a whole or on Armendariz' territory in particular. Armendariz relies on language from Texas Department of Community Affairs v. Burdine, 101 S. Ct. 1089, 1095 (1981), which suggests that pretext can be established merely "by showing that the employer's proffered explanation is unworthy of credence."[7] However as Armendariz has failed to produce sufficient evidence from which the jury could disbelieve the employer's stated reason, we need not reach the question of whether Armendariz' construction of Burdine is correct.

In any event, whether Armendariz was warned that his job was in jeopardy is immaterial in this case to a finding of age discrimination. The ADEA does not prohibit termination without warning. Further, Armendariz himself testified that he participated in the two meetings in which Dallas regional manager Peters expressed grave concern about the high costs of doing business in the Denver division. Second, Peters testified at trial

---

[7] By doing so, Armendariz has chosen to ignore the Supreme Court's disavowal of that quote in St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2753 (1993), which states: "we think the [Burdine] dictum at issue here must be regarded as an inadvertence, to the extent that it describes disproof of the defendant's reason as a totally independent, rather than an auxiliary, means of proving unlawful intent." As the Court made abundantly clear in St. Mary's, the employee at all times has the burden of proving, not only that the employer's stated reasons were false, but also that those reasons were a pretext for unlawful discrimination. St. Mary's, 113 S. Ct. at 2751-53. Otherwise, the ADEA would be converted into a statute prohibiting employers from firing people within the protected class without cause. See Burns v. Texas City Refining, 890 F.2d 747, 750 (5th Cir. 1989); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1508 n.6 (5th Cir. 1988).

12

that Armendariz was qualified to be rehired and explained that the intra-company report indicated otherwise because Pinkerton did not anticipate hiring anyone else in the El Paso area. Finally, Peters' inability to furnish profit and loss figures at trial is likewise immaterial. Armendariz argues that profit and loss evidence was necessary to establish the "business necessity" of Pinkerton's decision to dissolve the Denver division. Armendariz has apparently confused Title VII disparate impact case law with his own ADEA claim. Surely the ADEA does not require that an employer prove that it is in fact loosing money before it can take a nondiscriminatory and legitimate course of action to make more. Armendariz did not offer substantial evidence that Pinkerton's asserted reason lacked veracity.

Armendariz next offers several equally unavailing lines of evidence that Pinkerton's decision to discharge him was motivated by impermissible factors. Ample time at trial and a considerable portion of the plaintiff's closing argument was devoted to whether Armendariz' high salary or fast-approaching eligibility for retirement benefits motivated Pinkerton's decision. Even if proven true, that would not be sufficient alone to support a finding of age discrimination because the ADEA prohibits discrimination on the basis of age, not salary or seniority. See Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, 1706-08 (1993); Amburgey v. Cohart Refractories Corp., Inc., 936 F.2d 805, 813 (5th Cir. 1991). Further, undisputed and strikingly clear evidence established that Armendariz' salary (which exceeded that of the lowest paid

13

salesperson in the division by only ten percent) was not the cause of the high costs associated with servicing Armendariz' territory. In fact, even if Armendariz had been paid no salary at all, his cost per dollar of sales would still have exceeded both the national average for all Pinkerton divisions as well as Pinkerton's 10 cents per dollar of sales maximum figure for direct service areas. Similarly, the undisputed evidence at trial was that Armendariz was fully vested in Pinkerton's retirement plan when he was discharged and that he became eligible for early retirement benefits in December 1992.

Armendariz did not offer evidence that Pinkerton systematically disfavored older employees. In fact he seemed to be unaware at trial just what the ages of the discharged and retained employees were. Armendariz' initial EEOC complaint (which was returned with a finding of "no discrimination") claimed that the two oldest sales representatives in the Denver region were selected for termination while the retained employees were all younger. At trial, however, it was established that Boyd, who was retained, was in fact four years older than Brown, who was discharged. Of the four salespeople retained and reassigned to other divisions, two were younger than forty and two were older than forty. In addition, Armendariz was under the impression that all of the division managers in the Dallas region were under forty. In fact, two of the four managers were over forty years of age. Finally, Armendariz cited as evidence of age discrimination the fact that he had not been offered Ardrey's position when that salesman resigned

14

several months after Armendariz' discharge.  Aside from the fact that Ardrey's territory was some distance away from Armendariz' own, Ardrey was replaced by a salesman who, at age 48, was well within the protected class.

Armendariz' case ultimately rests on his own subjective belief and the belief of another Pinkerton employee, Sheila Ratliff, that Armendariz had been discriminated against on the basis of age.  We have traditionally been very cautious about self-serving and conclusory testimony based on a subjective belief that age discrimination occurred.  <u>See</u>, <u>e.g.</u>, <u>Little v. Republic Refining Co.</u>, 924 F.2d 93, 96 (5th Cir. 1991).  Armendariz own belief that he was discriminated against is further undermined by his admission that his assumptions about the ages of other employees hired and fired were inaccurate and by his failure to rebut in any way Pinkerton's demonstrated reason for his discharge.  <u>See</u> <u>Molnar v. Ebasco Constructors, Inc.</u>, 986 F.2d 115, 119 (5th Cir. 1993) (employee's subjective belief that age discrimination occurred is insufficient to create jury issue when employer articulates an adequate nondiscriminatory reason for the discharge).

Sheila Ratliff, age 51, is a Pinkerton field sales coordinator who works with regional manager Peters, also age 51, on a daily basis.  She testified at trial by deposition summary only.  Ratliff testified that Peters had "programmed her for failure" and repeatedly humiliated her on the job.  As a result of the stress, she began having problems with her memory.  At that point Peters began harassing her with comments about how she was "getting old"

15

and "losing her memory." Ratliff stated that she had filed numerous complaints about Peters with Pinkerton's Human Resources Department because she felt his behavior jeopardized her job. Such remarks, if they were made, were "stray remarks" which were too remote and vague to be probative of age discrimination against Armendariz. See Waggoner v. City of Garland, 987 F.2d 1160, 1166 (5th Cir. 1993); Turner v. North Am. Rubber, Inc., 979 F.2d 55, 59 (5th Cir. 1992) (age related comments that are vague and remote in time are not sufficient to establish age discrimination).

As to Armendariz, Ratliff expressed the opinion that Peters had "blatantly discriminated" against Armendariz on the basis of age by discharging him to avoid paying retirement benefits. As discussed above, the ADEA does not provide a cause of action for interference with retirement benefits that are based on seniority, without evidence the decision was motivated by age. Hazen Paper, 113 S. Ct. at 1706-08. In any event, Ratliff admitted that her opinion about Armendariz was "only conjecture" and stated that she concurred with the decision to close the Denver office as well as the decision to allow independent brokers to handle high-cost territories in the division.

Neither Armendariz' nor Ratliff's subjective belief that Armendariz had been discriminated against was sufficient to create a jury issue as to whether Pinkerton's reason was a pretext for age discrimination. Molnar, 986 F.2d at 119 (subjective belief that age discrimination was basis of discharge is insufficient to make an issue for the jury when employer articulates an adequate

16

nondiscriminatory reason); Little, 924 F.2d at 96 (subjective belief of employee and co-worker that age motivated the employer's action is of little value and can not be the basis of judicial relief); Amburgey v. Cohart Refractories Corp., Inc. 936 F.2d 805, 814 n.40 (5th Cir. 1991); Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 567 (5th Cir. 1983) (when the employee does not seriously dispute the objective truth of rational reasons articulated by the employer, pretext can not be established by a subjective belief that discrimination motivated the employer's action), cert. denied, 476 U.S. 1215 (1984).

## V.   CONCLUSION

After a thorough review of the entire record, we conclude that the jury's verdict was not supported by substantial evidence. The jury could not have reasonably concluded that Armendariz met his burden of establishing a violation of the ADEA. Armendariz did not produce evidence sufficient to meet his prima facie burden of showing that Pinkerton did not treat age neutrally in its decision to dissolve the Denver division and eliminate his position. Although he complains that Pinkerton did not offer him a transfer to another Pinkerton territory, Armendariz did not produce evidence that Pinkerton had relocated any other salesmen and Pinkerton adduced evidence that it had not. Significantly, Armendariz did not offer evidence that attacked the truth or accuracy of the evidence presented by Pinkerton concerning its financial objective of reducing the cost of sales in the ailing Denver division. Basically, all Armendariz offered to rebut Pinkerton's articulated

17

reason was the subjective belief of a fellow employee, along with his own, that unlawful age discrimination drove Pinkerton's decision to discharge him. In the face of overwhelming evidence to the contrary, that evidence is insufficient to support the jury's verdict in his favor. Because we find the evidence insufficient to support the jury's verdict, Armendariz' points on cross appeal concerning damages are necessarily without merit. The district court's judgment based on the jury finding is REVERSED and judgment is RENDERED that the plaintiff take nothing.