James H. **YELVERTON**

v.

**GRAEBEL/HOUSTON MOVERS, INC.**

**No. Civ.A. 9:00–CV–117.**

United States District Court,
E.D. Texas,
Lufkin Division.

Sept. 22, 2000.

Alex Arthur Castetter, Stucky Garrigan & Castetter, Nacogdoches, TX, for plaintiff.

Thomas D Kennedy, Johnson Finkel Deluca & Kennedy, Houston, TX, Cari Westerhof, Kevin Wolf, Ruder Ware & Michler, Wausau, WI, for defendant.

## *MEMORANDUM OPINION*

COBB, District Judge.

This is an age discrimination case filed by plaintiff James H. Yelverton against his former employer, defendant Graebel/Houston Movers, Inc. ("Graebel"). Yelverton, then 67 years old, was terminated from his position as household goods surveyor with Graebel. He makes two claims arising out of that incident. First, he contends that his termination violates the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et. seq.* Second, he asserts that Graebel's actions amount to an intentional infliction of emotional distress under Texas state law. Graebel moves for summary judgment on both of these claims. After reviewing the evidence, the Court denies summary judgment on the ADEA claim because a fact issue exists with respect to whether Graebel's justification for Yelverton's termination is pretextual. The Court, however, grants summary judg-

ment with respect to the intentional infliction of emotional distress claim because Yelverton has not shown that Graebel's conduct was extreme and outrageous and has presented no evidence that he suffered severe emotional distress. The Court presents the facts in the light most favorable to the plaintiff without prejudice to the defendant's right to contest any such facts at trial.

## I. Facts

Graebel is in the moving and storage business and employs about 175 people. As part of its business, Graebel employs household goods surveyors who estimate the cost and time required to serve Graebel's customers. James Yelverton was employed with Graebel as a surveyor for over seven years and was responsible for providing surveys for Graebel throughout East Texas. He is 69 years old. It is undisputed that Yelverton was never disciplined or told that he was not doing a good job during his term at Graebel. On October 31, 1998, Graebel terminated Yelverton's employment.

The central dispute in this case involves the reason behind Yelverton's termination. Yelverton is convinced that his termination was the result of age discrimination. He timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Texas Commission on Human Rights. *See* 29 U.S.C. 626(d). He received his right-to-sue letter on March 9, 1999. Yelverton contends specifically that Graebel's age discrimination is apparent in that his termination followed almost immediately from an inquiry he made to Graebel's human resources department concerning his social security and veteran's benefits. Because they are central to this case, a discussion of the events leading up to Yelverton's termination is necessary.

During his final year of employment, Yelverton received an auto allowance of $550 per month. He was not the only surveyor receiving this benefit. Shortly before his termination, Yelverton began making inquiries about the effect that his automobile allowance was having on his social security and veteran's benefits. In an attempt to resolve these issues, Yelverton contacted Laurie Wojcik, Human Resources and Payroll manager at Graebel in Wausau, Wisconsin. Wojcik passed Yelverton's inquiry on to Debbie Gendill, and on October 1, 1998, an e-mail was sent from Gendill to Graebel's General Manager Paul Anderson in Houston, Texas. The e-mail stated that "Laurie Wojcik in the Wasau Payroll Dept. has a request from the Social Security Administration concerning James Yelverton and his allowance payment (since he is over 65)." (Pl.'s Resp. Opp'n Def.'s Mot.Summ.J.Ex. 7). This e-mail was forwarded to Don Rupe, Graebel's Sales Manager and Yelverton's direct supervisor, on October 6, 1998 with the subject "James Yelverton—Auto Allowance." *See id.* Mr. Rupe had been in his position as sales manager for one day when he received the e-mail.

Yelverton received no response from any of the above mentioned individuals and so, on October 14, 1998, he wrote a letter on the matter to Graebel's Human Resources department. Yelverton received no response to his letter. He, however, was notified by letter dated October 28, 1998, that his employment was terminated effective October 31, 1998. Graebel claims to have based its decision on its determination that Yelverton's continued employment was not cost justified. Convinced that he was terminated because of his age, Yelverton brought suit under the ADEA and Texas state law.

## II. Analysis

Graebel moves for summary judgment on the ADEA and the intentional infliction of emotional distress claims. First, Graebel asserts that the Court should grant summary judgment on the ADEA claim because it has satisfied its burden of articulating a legitimate, nondiscriminatory reason for terminating Yelverton, and Yelverton has offered no evidence that Graebel's reason is pretextual or that he was

actually terminated for discriminatory reasons. Second, Graebel contends that the Court should grant summary judgment on the intentional infliction of emotional distress claim because Yelverton has not shown that Graebel's conduct was "extreme and outrageous" or that Yelverton suffered "severe emotional distress." The Court begins by discussing the standards by which Graebel's motion will be evaluated.

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant shows that the pleadings, affidavits, and other evidence available to the court establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the material facts are assessed, the court must determine whether the evidence reveals the presence of genuine factual issues. A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court will decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994).

Because employment discrimination claims generally involve "nebulous questions of motivation and intent," summary judgment is usually considered an inappropriate tool for resolving these cases. *See Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir.1979) ("When dealing with employment discrimination cases, ...

granting of summary judgment is especially questionable."); *EEOC v. Southwest Texas Methodist Hospital*, 606 F.2d 63, 65 (5th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 761 (1980). "Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *See Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 647 (5th Cir.1985). If the defendant, however, is able to present strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be appropriate. *See Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993). The Court addresses defendant's motion with these standards in mind.

### B. ADEA Claim

Yelverton asserts an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 621, *et. seq.* Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can prove age discrimination either by direct evidence or circumstantially, through a series of shifting burdens of proof. Yelverton has not offered direct evidence of age discrimination, so the Court considers his claim under the burden shifting approach. The basic methodology for evaluating an ADEA claim based on circumstantial evidence was demonstrated in *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), an employment discrimination case. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (applying

McDonnell Douglas analysis to ADEA claim). The McDonnell Douglas model establishes "an allocation of the burden of production and an order for the presentation of proof." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Under this burden allocation methodology, Yelverton first bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *See St. Mary's*, 509 U.S. at 506, 113 S.Ct. 2742. If Yelverton establishes a prima facie case, he "in effect creates a presumption that [his employer] unlawfully discriminated against" him. *Id.* This presumption then "places upon the defendant the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *Id.* at 507, 113 S.Ct. 2742. If the defendant can carry this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the defendant were not its true reasons, but were instead a pretext for discrimination. *Id.* at 515, 113 S.Ct. 2742. It is important to note, moreover, that if the defendant meets its burden of producing legitimate, nondiscriminatory reasons for its actions, "the presumption raised by the prima facie case is rebutted and drops from the case." *Id.* at 507, 113 S.Ct. 2742 (citations omitted). The plaintiff, of course, retains the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." *Id.* at 508, 113 S.Ct. 2742.

### i. Yelverton's Prima Facie Case

Yelverton must first establish a prima facie case of discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). A plaintiff demonstrates a prima facie case by showing that: (1) he was discharged; (2) he was qualified for the position; (3) he was with-in the protected class; and (4) he was either (a) replaced by someone outside the protected class, (b) replaced by someone younger, or (c) otherwise discharged because of his age. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir.1995). The third alternative to the last element applies only in circumstances when the employee is not replaced. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999). It is essentially undisputed that Yelverton has satisfied his initial burden: (i) at the time he was fired, he was, at the age of 67, a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)), (ii) he was otherwise qualified for the position of household goods surveyor, and (iii) he was discharged by Graebel. On the fourth element, Graebel initially challenged whether Yelverton had established that he had been replaced, arguing that his position was simply eliminated. But in its reply to Yelverton's response to the Motion for Summary Judgment, Graebel concedes that Yelverton has established a prima facie case. (Def.'s Reply Pl.'s Opp'n Mot.Summ.J. at 2.) The evidence, in fact, establishes that Graebel originally reassigned two younger persons to perform the work that Yelverton had been performing and then hired an independent contractor to perform those services. Thus, Yelverton has offered sufficient evidence to make out his prima facie case of discrimination and, therefore, shift the burden to Graebel.

### ii. Graebel's Legitimate, Non–Discriminatory Reason

Once Yelverton demonstrates a prima facie case, the burden shifts to the Graebel to establish a legitimate, nondiscriminatory reason for its decision. *Armendariz*, 58 F.3d at 149. This burden is "one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2106. Moreover, the burden on the employer is light. "If the employer has produced any evidence

'which taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden." *See Thornton v. Neiman Marcus,* 850 F.Supp. 538, 543 (N.D.Tex.1994) (quoting *St. Mary's,* 509 U.S. at 509, 113 S.Ct. 2742).

Graebel offers one legitimate, nondiscriminatory reason for its action. It contends that continuing Yelverton's employment was not justified from an economic perspective. According to testimony from Paul Anderson and Donald Rupe, they were hired to cut costs and improve performance in the underperforming company. Their performance improvement plan included the cost/benefit evaluation of all aspects of the company for which they were responsible. Yelverton, according to Graebel, was simply a casualty of this process. The Fifth Circuit has opined that "[j]ob elimination or office consolidation is a sufficient nondiscriminatory reason for discharge under the ADEA." *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 150 (5th Cir.1995). Thus, Graebel has met its burden of showing a legitimate, nondiscriminatory reason for terminating Yelverton. As with most discrimination cases, this one turns on the issue of whether the defendant's stated reason for the discharge is a pretext for discrimination. *See Thornbrough v. Columbus and Greenville R.R. Co.,* 760 F.2d 633, 639 n. 6 (5th Cir. 1985).

### iii. Yelverton's Showing that the Articulated Reason is Pretextual

Because Graebel has rebutted Yelverton's prima facie case of discrimination by offering a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Yelverton to prove that Graebel's reason is merely a pretext for discrimination. The Supreme Court has determined that a plaintiff must present evidence establishing not only that the enunciated reasons for his discharge were not its true reasons, but also that they operated as a pretext for discrimination. *See St. Mary's,* 509 U.S. at 507–08, 113 S.Ct. 2742. All presumptions in favor of the plaintiff disappear once a defendant has offered a valid reason for its actions, and the sole remaining issue is whether the defendant unlawfully discriminated against the plaintiff. *See Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106 (quoting *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). To satisfy this burden, the plaintiff "may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207, (1981)). Finally, "although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106 (citations omitted).

Graebel contends that summary judgment is appropriate because Yelverton has not established that Graebel's enunciated reasons for his discharge were false, nor that they operated as a pretext for discrimination. Yelverton can avoid summary judgment on the question of pretext "if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains." *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996). The Court finds that Yelverton's evidence is sufficient to defeat Graebel's Motion for Summary Judgment.

Graebel's primary argument in support of its motion can be reduced to one sen-

tence: The mere fact that Rupe conducted a cost/benefit analysis around the same time Yelverton was questioning the impact of his car allowance on his social security benefits with others in the company does not raise a factual issue as to whether Graebel acted with improper motive. Yelverton responds, not by offering direct evidence of discrimination, but by presenting evidence that tends to question the motivation for and truthfulness of Graebel's explanation for its actions.

■ The Court begins with Graebel's alleged cost/benefit justification. The details of Yelverton's compensation package support Anderson and Rupe's testimony that Yelverton was more expensive than other surveyors. Yelverton received a monthly car allowance of $550 a month plus $30 for each survey performed within 49 miles of Palestine, Texas; $50 for each survey between 50 and 99 miles from Palestine, Texas; and $70 for each survey more than 99 miles from Palestine, Texas. (Yelverton Dep. at 25; Rupe Dep. at 11, 13–14.) As part of his analysis, Rupe determine that Yelverton was performing most of his surveys in places outside of "deep East Texas," where Graebel would reap the benefits of his lowest rate, and instead, was doing most of his work in areas such as Beaumont, Port Arthur, and College Station. These areas were already being served by the two other surveyors on Graebel's staff, so the added costs and time that Yelverton required as compared to the other surveyors made him more expensive on a per job basis. Add to the increased time and cost the $550 per month car allowance, which Yelverton was paid even if he only did one survey, and, Graebel argues, it would be more cost effective for Graebel to do surveys in East Texas by telephone or by using an independent contractor. To support their justification, Graebel points to the fact that since Yelverton's termination, it has used the services of an independent contractor, Vicki Burleigh, to perform the work that Yelverton otherwise would have performed. Burleigh receives between $55 and $75 per survey and no other benefits. Faced with this reasonable justification for Graebel's action, the burden is on Yelverton to raise a fact issue as to whether Graebel's stated reason was not what actually motivated it and create a reasonable inference that age was a determinative factor in his termination. *See Rhodes,* 75 F.3d at 994.

Yelverton first attacks Graebel's supposed motivation for performing the cost/benefit analysis on him. He attempts to link the timing of Graebel's evaluation to its motivation by arguing that Graebel began its analysis on him only after learning that he was over 65 and had concerns about his social security and veterans benefits. Although Graebel is correct that a timing argument alone may not be sufficient to defeat summary judgment, *See Nelson v. J.C. Penney Co., Inc.,* 75 F.3d 343, 346 (8th Cir.1996), *cert. denied,* 519 U.S. 813, 117 S.Ct. 61, 136 L.Ed.2d 23 (1996), when the defendant's justification includes a denial of knowledge of the plaintiff's age, evidence that refutes that denial may be critical. See *Reeves,* —— U.S. at ——, 120 S.Ct. at 2108 (concluding that a court "can reasonably infer from the falsity of the explanation that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt."). This is, after all, a circumstantial evidence case. It is undisputed that the cost/benefit analysis of Yelverton's employment began only one day after Yelverton's inquiry into his social security problems. Although he had been in his position as General Manager for over six months, Anderson testified in his deposition that the first he ever heard of Yelverton was when he received a call from the Tony Weber, General Manager of Graebel/Dallas, about an inaccurate survey conducted by Yelverton. (Anderson Dep. p. 16.) Yelverton, however, has produced evidence indicating that Weber's call did not take place until October 7. By that time, Anderson had already received the e-mail on Yelverton's social security

problems and had initiated the evaluation of his employment. Yelverton also offered evidence that Rupe knew about the social security problems (and Yelverton's age) before he began his cost/benefit analysis, evidence that directly contradicts Rupe's deposition testimony. (Pl.'s Resp. Def.'s Mot.Summ.J. at 4.) The contradictions in Graebel's explanation of their motivations are evidence that a jury could consider in determining whether Graebel's actions were motivated by Yelverton's age.

Graebel responds that evidence offered by Yelverton amounts only to his subjective belief that he was discriminated against because of his age and is insufficient as a matter of law to create a jury issue. It is correct that a plaintiff's subjective belief that he has been discriminated against is insufficient to create a jury issue as to whether a defendant's reason was a pretext for discrimination. *See Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 153 (5th Cir.1995) (Neither [plaintiffs'] subjective belief that [defendant] had been discriminated against was sufficient to create a jury issue ...); *Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 435 (5th Cir.1995) ("[B]ald assertions of age discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against [plaintiff]."). As discussed above, however, Yelverton has offered more than his subjective belief. He has questioned Graebel's motivation for its action.

Graebel also asserts that Yelverton has offered no evidence that Rupe believed his cost/benefit analysis was inaccurate or that it actually was inaccurate. But Yelverton has attacked the accuracy of the analysis by arguing that it failed to compare Yelverton with all the other surveyors. (Pl.'s Resp. Opp'n Def.'s Mot.Summ.J. at 9–10.) He has, more importantly, offered evidence that raises questions about whether it was done at all. Yelverton produced evidence that no documentation exists of any cost/benefit analysis even though Graebel's policies require management to

document this kind of activity. Rupe testified that after he performed the analysis on a legal pad, he probably "threw them away." (Rupe Dep. p. 47.) Moreover, in response to his own counsel's questioning, Rupe attempted to recreate his analysis and in doing so, raised several factual questions. He testified, for instance, that he evaluated Yelverton against employees Vicki Burleigh and Norb Gould and determined that he would save money by using one of them instead of Yelverton. Mr. Gould, however, was not employed with Graebel at the time, and thus, could not have been subject to the analysis Rupe testified about. (Rupe Dep. at 140.) In addition, there is some question about Anderson's belief that a comparison of Yelverton's costs with those of the other surveyors was performed. (Anderson Dep. at 26.) This evidence raises the question of whether the analysis was performed at all.

Graebel also dismisses Yelverton's allegation that the cost justification defense is "unworthy of credence" as insufficient to create a fact issue. But proof that a defendant's explanation is unworthy of credence is a valid form of circumstantial evidence that is probative of intentional discrimination. *See St. Mary's,* 509 U.S. at 517, 113 S.Ct. 2742, 125 L.Ed.2d 407; *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2109 ("Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). Graebel contends that it is not the function of the court to question the prudence of Graebel's business judgment, but to search the record for discriminatory motive and only to ensure that there was a rational basis for the decision that was made. It is correct that Yelverton's argument on the accuracy or effectiveness of Graebel's analysis is not by itself sufficient summary judgment evidence. *See Beaver v. Rayonier, Inc.,* 200 F.3d 723, 727 (11th Cir.) ("[T]he employer is free to choose whatever means it wants,

so long as it is not discriminatory, in responding to bad economic conditions. It is not our role to second-guess [Defendant's] decision to respond to a loss in sales at the mill by cutting its workforce."). But Graebel asks the Court to ignore any inferences created by the evidence that it might have been motivated by something other than pure economics. The ·Court will not oblige.

Although none of these discrepancies alone could defeat Graebel's summary judgment motion, together they raise serious questions about Graebel's motivation and they create the inference that age could have been a factor. These discrepancies must be viewed against the fact that Graebel never attempted to renegotiate Yelverton's contract as it did with other similarly situated employees, that no employee other than Yelverton was terminated as part of the cost/benefit analysis, that Yelverton was Graebel's oldest employee, and that the only other employee affected by the review was transferred to another position within the company. The bottom line is that Graebel's economic explanation for its decision to terminate Yelverton is weakened by the contradicted statements Anderson and Rupe have made on their knowledge of Yelverton's age and social security concern and the inconsistencies in their explanations of the cost/benefit analysis.

In sum, Yelverton's has presented sufficient evidence on his claim for age discrimination against Graebel to defeat Graebel's motion. Yelverton has raised a fact issue as to whether Graebel's stated reason was not what actually motivated it and create a reasonable inference that age was a determinative factor in his termination. Graebel's Motion for Summary Judgment with respect to this claim is, therefore, denied.

### C. Intentional Infliction of Emotional Distress Claim

Yelverton also claims that Graebel's conduct violated his Texas common law right to be free from intentional infliction of emotional distress. Graebel moves for summary judgment on this claim on two grounds. First, termination alone, even if wrongful, is not sufficient evidence that its conduct was extreme and outrageous conduct. Second, even if Yelverton suffered some emotional distress over his termination, the distress was not severe. The Court agrees with Graebel on both grounds.

■ To recover for the tort of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous;" (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting distress was severe. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993) (citing Restatement (Second) of Torts § 46, cmt. d.). Yelverton's evidence falls short of being legally sufficient to create a fact issue on the second and fourth elements.

### i. Extreme and Outrageous Conduct

The Texas Supreme Court has explained that "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Where, as here, the claim arises out of an employment dispute, a court must be cautious to ensure that the employment-at-will doctrine is not undermined, and that the defendant is not subjected to a potential jury trial arising out of virtually every discharge. *See McKethan v. Texas Farm Bureau*, 996 F.2d 734, 742 (5th Cir.1993). For this reason, when applying Texas law, the Fifth Circuit has insisted that the conduct be intentional and systematic degradation and humiliation, *see Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991), or reprehensible conduct utterly intolerable in a civilized society. *See Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306–07 (5th Cir.1989); *see also GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605,

611 (Tex.1999) (quoting *Twyman*, 855 S.W.2d at 621.) (To satisfy the "extreme and outrageous" conduct element, a defendant's "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' ")

██ Yelverton bases his claim of intentional infliction of emotional distress on the fact that he was terminated with no warning after almost eight years of employment with Graebel, and the fact that he was not given a letter of recommendation. He contends that Graebel "jeopardized his well-being and emotional stability" through these acts. Importantly, Yelverton has produced no other evidence on this element of his claim, such as evidence that Graebel's conduct included demoting him to menial duties, harassing him, or accusing him of criminal wrongdoing. *See Wornick Company v. Casas*, 856 S.W.2d 732, 736 (Tex.1993) (cases cited therein). Yelverton's evidence does not show that Graebel's conduct was extreme and outrageous.

The Texas Supreme Court has adopted a "strict approach" to intentional infliction of emotional distress claims arising in the workplace. *See Id.* at 612. This view recognizes that "to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees." *See Id.* Particularly relevant for Yelverton's case, the Texas Supreme Court has held that "the mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous under the rigorous standard" that it established in prior cases. *Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998).

In *Southwestern Bell*, plaintiffs sued their ex-employer claiming that they were fired in retaliation for reporting sexual harassment to a state agency. Plaintiffs produced evidence that defendant fired them "in the unnecessary presence of co-workers, forced them to collect and remove their belongings in front of others, and immediately took steps to repossess car phones that [defendant] owned." *Id.* The Texas Supreme Court held that this evidence fell "far short of being legally sufficient to prove Southwestern Bell's conduct was extreme and outrageous," *Id.* In this case, Yelverton's evidence on Graebel's allegedly wrongful action fails even to rise to the level of that found insufficient in *Southwestern Bell.* Even assuming, therefore, that Graebel terminated Yelverton's employment because of his age, the Court is bound to hold that this conduct is not sufficient to sustain the present claim. *See Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993); *Honea v. SGS Control Services Inc.*, 859 F.Supp. 1025, 1031 (E.D.Tex.1994); *see also Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994) ("Even though conduct may violate Title VII as sexual harassment, it does not necessarily become intentional infliction of emotional distress under Texas law.").

Although Yelverton's intentional infliction of emotional distress claim fails on the "extreme and outrageous" conduct element alone, for completeness, the Court will also address whether he has produced sufficient evidence on the severe emotional distress element.

### ii. Severe Emotional Distress

██ Graebel contends that any distress suffered by Yelverton was not severe. Graebel argues that evidence that Yelverton had not visited a doctor or psychologist for emotional problems arising from his termination, that he was taking Hydroxyzine to help him sleep even before his termination, and that he is still involved with political campaigns shows that his emotional distress is not severe. Yelverton asserts that the requisite severity is shown in that he simply does not do the things he used to do; he is antisocial and withdrawn; and he just sits at home and takes care of his disabled daughter. The

Court finds that Yelverton has not produced legally sufficient evidence on the fourth element of his intentional infliction of emotional distress claim.

 "Emotional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry." *See GTE Southwest,* 998 S.W.2d at 618. Severe emotional distress, on the other hand, is distress that is so severe that no reasonable person could be expected to endure it. *See id.* Yelverton has not met the Texas standard for showing severe emotional distress. Although not an absolute requirement, he did not see a doctor after his termination to help him deal with the distress. He has not shown any "emotional outbursts, nausea, stomach disorders, headaches, difficulty sleeping and eating, stress, anxiety, and depression" caused by his termination. *See GTE Southwest,* 998 S.W.2d at 618–19. The only evidence that comes close to raising a fact issue is Yelverton's testimony that he is taking Hydroxyzine, a drug designed to deal with his inability to sleep. This evidence, however, is minimized by his further testimony that he was taking this medication before his termination to deal with his daughter's serious mental and physical injuries, which she sustained in a motorcycle accident in 1973. As a result of these injuries, for the past four years, Yelverton has been saddled with the financial expense of caring for his daughter as well as the painful emotional costs associated with caring for an injured loved one. It was because of this stress that Yelverton began taking the sleep medication. Because he has offered no other evidence on the severity of his emotional distress, Yelverton's claim of intentional infliction of emotional distress fails on this element as a matter of law.

In sum, Yelverton's claim for intentional infliction of emotional distress fails as a matter of law because termination alone is insufficient to show extreme and outrageous conduct and his distress was not severe. Graebel's motion for summary

judgment with respect to this claim is, therefore, granted.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's ADEA claim and GRANTED as to Plaintiff's state law intentional infliction of emotional distress claim.