Ruby MOSLEY, Plaintiff,

v.

HOUSTON COMMUNITY COLLEGE SYSTEM, et al., Defendants.

Civil Action No. H–93–2457.

United States District Court, S.D. Texas, Houston Division.

April 18, 1996.

Laurence Wade Watts, Watts & Associates, Houston, TX, for Ruby Mosley.

Arturo Gabriel Michel, Bracewell & Patterson, Houston, TX, for Houston Community College.

## MEMORANDUM OPINION

ATLAS, District Judge.

The Court has before it five motions: Plaintiff's **Motion for Leave to Amend Plaintiff's Original Complaint** [Doc. # 46], filed November 2, 1995, which Defendants oppose as untimely; Plaintiff's **Motion for Extension of Time to Respond to Defendants' Opposition to Plaintiff's Motion for Leave to File an Amended Complaint** [Doc. # 53]; Defendants' **Motion for Partial Summary Judgment** [Doc. # 13], filed August 12, 1994 (hereinafter "1994 Motion"), to which plaintiff has not responded; Defendants' **Motion for Summary Judgment** [Doc. # 29], filed May 12, 1995 (hereinafter "1995 Motion"), to which Plaintiff has responded and Defendants replied; and, Defendants' **Motion to Exclude Plaintiff's Expert Testimony** [Doc. # 42], filed September 29, 1995, to which plaintiff has not responded.

The Court has considered the above motions, the relevant responses and replies, all other matters of record in this case, and the applicable authorities. In the Order of March 31, 1996 [Doc. # 55], this Court ordered as follows:

- Plaintiff's Motion for Leave to Amend Plaintiff's Original Complaint [Doc. # 46] is **DENIED**;
- Plaintiff's Motion for Extension of Time to Respond to Defendants' Opposition to Plaintiff's Motion for Leave to File an Amended Complaint [Doc. # 53] is **DENIED**;
- Defendants' Motion for Partial Summary Judgment [Doc. # 13] is **GRANTED**;
- Defendants' Motion for Summary Judgment [Doc. # 29] is **GRANTED**; and,
- Defendants' Motion to Exclude Plaintiff's Expert Testimony [Doc. # 42] is **DENIED AS MOOT**.

This memorandum opinion provides the reasoning underlying the Court's order.

## PROCEDURAL BACKGROUND

Plaintiff filed this action on August 12, 1993, alleging race discrimination and retaliation by the Houston Community College System ("HCCS"); Charles Green, former Chancellor of HCCS; James Engle, President of the HCCS Central Campus ("Central"), where Plaintiff worked at the time of the commencement of the events giving rise to this action; Maya Durnovo, Dean of Students/Administration; Pat Williamson, Vice Chancellor of Student Services; Maude Ferguson, Associate Vice Chancellor of Support Services; and, Diana Castillo, Assistant Dean of Central. Plaintiff specifically asserts claims for denial of equal protection and due process of law in violation of the federal and state constitutions,[1] as well as 42 U.S.C. § 1981 and § 1983, claiming harassment and disparate treatment in employment transfers and disciplinary procedures. She also alleges that Defendants deprived Plaintiff of her liberty interest to be free from punishment and retaliation, and of her property interest in continued employment as a counselor at Central. Plaintiff further asserts that Defendants are not entitled to any form of immunity since they acted intentionally, with bad faith and/or conscious disregard of Plaintiff's constitutional rights.

By Motion filed November 2, 1995, Plaintiff seeks to file a First Amended Complaint alleging additionally that Defendants retaliated against Plaintiff because of her exercise of fundamental rights to free expression, privacy, and free speech and association, as secured by the First Amendment to the United States Constitution and Article 1, Section 8 of the Texas Constitution.

The parties have engaged in discovery that has included the depositions of Plaintiff and most of the Defendants (all that Plaintiff has sought), plus the production of documents. Various courtesies have been extended by counsel to each other to accommodate their and their clients' respective schedules. This case has been pending for well over two years and more than adequate time for discovery has occurred. No party has contended in connection with any of the pending motions that there is a need for additional discovery.

---

**1.** Plaintiff brings her constitutional claims under the Fourteenth Amendment of the United States Constitution and Article 1, Sections 3a and 19 of the Texas Constitution.

## FACTUAL BACKGROUND

Plaintiff, an African–American, alleges in her Original Complaint that during the years 1991 to 1993, she was discriminated against on the basis of race. Plaintiff claims that Defendants Charles Green, James Engle, Maya Durnovo, Diana Castillo, Patricia Williamson, and Maude Ferguson each subjected her to intentional discrimination on the basis of her race. The following allegations make up Plaintiff's claim of racial discrimination:

- In April 1991, Plaintiff was interviewed by James Engle for a possible promotion to the position of Assistant Dean of Students; however, despite "her qualifications and an outstanding interview" she did not receive the promotion.

- Beginning in 1991, Maya Durnovo harassed Plaintiff through Plaintiff's immediate supervisor, Diana Castillo.

- In January 1992, Durnovo removed Plaintiff from her position as a part-time campus director under the pretense that part-time campus directors were no longer needed.

- In January 1992, Castillo informed Plaintiff that she was being assigned to a new position working with special student populations; Plaintiff objected on the grounds that the move was in fact a demotion, and consequently was not reassigned.

- In January 1992, Castillo and Durnovo harassed Plaintiff because of Plaintiff's refusal to be reassigned.

- In March 1992, the college refused to pay for Plaintiff's trip to a Phi Theta Kappa (PTK) promotional seminar in Washington D.C.; Engle stated to Plaintiff that she was not being given financial assistance because PTK should have a white advisor.

2. The Court, for the sake of completeness, will refer to Plaintiff's First Amended Complaint where it adds factual allegations.

3. In her Response to the 1995 Motion Plaintiff has objected to some of Defendants' evidence. She argues that this Court should not consider ten of Defendants' affidavits, and bases this argument only on the perfunctory assertion that the evidence is not relevant, has to do with events

- In March 1992, Plaintiff had a conference call with Charles Green to discuss the alleged treatment she had been receiving from Durnovo, Castillo, and Engle; Green told Plaintiff that he would remedy the situation but did nothing.

- From May 1992 until August 1992, Plaintiff was ill due to her stressful work environment; Castillo falsely accused Plaintiff of faking her illness and harassed her during her leave of absence by attempting to contact her.

- On August 1, 1992, upon her return to work, Plaintiff was transferred to the Jackson Hill office under the supervision of Maude Ferguson; Plaintiff appears to allege that this transfer was an involuntary demotion and was racially motivated, and that Green and Pat Williamson were responsible for the transfer.

- In early 1993, Ferguson unreasonably criticized Plaintiff and set her up for termination by inducing an adult student to write a false complaint against Plaintiff, and then placing Plaintiff on a ninety (90) day probation based on this complaint.

*See* Plaintiff's Original Complaint [Doc. # 1]; Plaintiff's proposed First Amended Original Complaint [Doc. # 47];[2] Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 40] (hereinafter "Plaintiff's Response");[3] Mosley Affidavit (Exhibit A to Plaintiff's Response). The factual allegations regarding the Defendants, respectively, are detailed below.

### a. *Maya Durnovo, Dean of Students/Administration at Central*

Plaintiff alleges that in January 1992, Maya Durnovo removed her from her position as a part-time campus director, under the pretense that part-time campus directors were no longer needed.[4] Mosley Affidavit

happening after the events made the basis of this suit, and (as to one paragraph of the Williamson Affidavit) is hearsay. Plaintiff's objections are overruled.

4. This contention was added to this case by Plaintiff's First Amended Original Complaint, at 9. Since this the Motion for Leave to Amend is denied, *see infra* at 12–13, this claim is not properly before the Court. However, assuming that

(Exhibit A to Plaintiff's Response), at ¶ 8. Plaintiff asserts that two non-blacks, Cid Cruz and David Bemis,[5] continued to serve as campus directors, *id.*, but offers no evidence to support this assertion. Plaintiff does not explicitly state that her removal was racially motivated.

Plaintiff further alleges that, beginning in 1991 when Durnovo became her supervisor, Durnovo began harassing her through Castillo, her immediate supervisor. Original Complaint, at 5. She also alleges that, because she had refused to be reassigned to another position in January 1992, Durnovo and Castillo harassed her by sending endless memoranda on an almost daily basis which generally were in reference to insignificant matters or incidents that had not taken place. Mosley Affidavit, at ¶ 9.[6]

Durnovo's affidavit states that she eliminated all of the part-time campus director positions in order to save money. Durnovo Affidavit (Exhibit H to 1995 Motion), at ¶ 3. Furthermore, Defendants have proffered evidence that Bemis was appointed to the position of facilities director and took over the functions formerly performed by the part-time campus directors because of his background as an electrician instructor, department head, and registered engineer, as well as his expertise in facilities management and equipment. *See id.* at ¶ 3; Bemis Affidavit (Exhibit F to 1995 Motion).

However, Plaintiff has not introduced any evidence to show that Durnovo's decision to eliminate the part-time campus director positions was racially motivated. Even accepting as true the allegation that Durnovo harassed Plaintiff, Plaintiff has presented no evidence that the harassment was motivated by racial animus. Indeed, to the contrary, she has alleged that Durnovo harassed her because she was jealous of Plaintiff's former intimate relationship with Defendant Engle. Original Complaint, p. 6; Plaintiff's Deposition (Exhibit A to 1995 Motion), Vol. I at 25–45; *id.*, Vol II, at 6–12.

### b. *Diana Castillo, Assistant Dean of Students of HCCS Central*

Plaintiff's complaints against Castillo involve the same incidents as her complaints against Durnovo.

First, Plaintiff alleges that Castillo, along with Durnovo, harassed her after she refused to be reassigned to another position in January 1992 by sending her frequent memoranda in reference to insignificant matters or incidents that had not taken place. Mosley Affidavit, at ¶ 9. Again, Plaintiff has presented no evidence that this harassment was due to racial animus. Castillo has responded that the memoranda were necessary because Plaintiff performed poorly in working with students and co-workers and Castillo wanted to notify her of her deficient work performance. Castillo Affidavit (Exhibit G to 1995 Motion), at 2–3. She further states that Plaintiff failed to follow her work schedule and to meet reporting deadlines. *Id.* Castillo states that she held all of her employees to the same requirements regardless of their race. *Id.*

Second, Plaintiff alleges that Castillo falsely accused her of faking the illness which caused her leave of absence, and that Castillo sent letters to Plaintiff during her absence asking when she would return. Original Complaint, at 10. Castillo has responded that she, like Durnovo, was only trying to contact Plaintiff to determine when Plaintiff would return to work, and that the return date was necessary to determine whether additional counseling support would be nec-

---

the Court were to consider this claim, it would still fail to defeat Defendants' summary judgment motion for the reasons stated herein.

**5.** It appears from the materials filed by Defendants that Bemis' first name is Richard, and not David. *See* Bemis Affidavit (Exhibit F to 1995 Motion).

**6.** In addition, Plaintiff alleges that Durnovo harassed Plaintiff during her leave of absence in the summer of 1992 by attempting to contact her; Durnovo has responded that she was only trying to contact Plaintiff, with approval of the Human Resources Department, to determine when Plaintiff would return to work, and that the return date was necessary in order to determine whether they should obtain additional counseling support during Plaintiff's leave. Durnovo Affidavit (Exhibit H to 1995 Motion), at ¶ 6.

essary while Plaintiff was on leave of absence. Castillo Affidavit, at 4, ¶ 16.

#### c. *James Engle, President of HCCS Central*

In April 1991, Plaintiff interviewed for a position as Assistant Dean of Students but, "despite her qualifications and an outstanding interview," was not given the position. Original Complaint, at 5. Instead, Engle gave the position to Castillo, who Plaintiff states had less experience. Plaintiff alleges that Engle had represented to her both before and after the interview that she would receive the promotion. *Id.* Engle has responded that he hired Castillo because she was best qualified for the position, and that he never represented to Plaintiff that she would be promoted. Engle Affidavit (Exhibit I to 1995 Motion), at 3, ¶¶ 12–13.

In March 1992, Plaintiff was scheduled to attend a promotional seminar in Washington D.C. for Phi Theta Kappa (PTK), an honor society. Original Complaint, at 7. However, Plaintiff was told by Castillo that she could not attend the seminar. Mosley Affidavit, at ¶ 12. Since the college would not pay for the trip, Plaintiff attended the job-related meeting at her own expense. Original Complaint, at 7. Plaintiff alleges that, when she asked Defendant Engle why she had not been given financial assistance to attend the PTK meeting, Engle stated that Phi Theta Kappa should have a white advisor. *Id.* at 7–8. Plaintiff further alleges that Engle had told Plaintiff this on several occasions. *Id.* Engle does not directly respond to this allegation in his affidavit.

Plaintiff's complaint also states that both she and Durnovo had romantic relationships with Engle, and that this motivated some of the harassment she suffered.

#### d. *Dr. Charles Green, Chancellor of HCCS*

Plaintiff states that, after learning in March 1992 that her expenses for the PTK seminar would not be paid by HCCS, she appealed to Dr. Green for his assistance, but that he took no action. Mosley Affidavit, at ¶ 12. Plaintiff also claims that at about that time, she had a conference call with Chancel-

lor Green to discuss the alleged retaliatory treatment she had been receiving from Defendants Durnovo, Castillo, and Engle. Original Complaint, at 9–10. Plaintiff alleges that Green falsely told her that he would investigate and remedy the situation. *Id.*

After her return from sick leave on August 1, 1992, Plaintiff was immediately transferred to the Jackson Hill office as an Info–Line Counselor in the Student Services Center. Mosley Affidavit, at ¶¶ 14, 16. She appears to claim that this transfer was involuntary and racially motivated, although she offers no evidence supporting this. She states that Green, along with Defendant Pat Williamson, was responsible for the transfer. *Id.* Green states that he reassigned Plaintiff to Jackson Hill because he wanted to place her in another work environment where she would not have the perception of harassment. Green Affidavit (Exhibit L to 1995 Motion), at ¶ 9.

#### e. *Dr. Pat Williamson, Vice Chancellor of Student Services*

As stated above, Plaintiff states that Dr. Pat Williamson, along with Dr. Green, was responsible for her August 1992 transfer to the Jackson Hill office as an Info–Line counselor. Mosley Affidavit, at ¶ 14, 16. As with Green, Plaintiff has offered no evidence that Dr. Williamson's actions regarding her employment were racially motivated.

Williamson responds that she had no involvement with regards to Plaintiff other than assisting Green in Plaintiff's transfer and supervising Maude Ferguson, who was Plaintiff's immediate supervisor at Jackson Hill. Williamson Affidavit, (Exhibit V to 1995 Motion), at 2. Williamson further states: "At no time did I take race into consideration concerning Ruby Mosley's employment or the employment of any other employee." *Id.* at 2–3.

#### f. *Maude Ferguson, Associate Vice-Chancellor of Student Services*

Plaintiff alleges that Maude Ferguson, who was her immediate supervisor at Jackson Hill and is also African–American, harassed Plaintiff at the command of Pat Williamson by demanding that Plaintiff prepare weekly

summaries of her work. Original Complaint, at 13–14. Plaintiff alleges that Ferguson called Maria Moreno, an adult student, and induced her to write a false complaint against Plaintiff to be used as a pretext for probation, and that Ferguson then placed Plaintiff on a ninety (90) day probation based on this student's complaint. *Id.* Plaintiff presents no evidence that Ferguson's activities were motivated by racial animus.

Ferguson has responded that she set out in Plaintiff's job description, on November 11, 1992, the standards and criteria by which Plaintiff's job would performance would be evaluated. Ferguson Affidavit (Exhibit J to 1995 Motion), at ¶ 3. Ferguson further states that Plaintiff's performance was deficient for the following reasons:

- Plaintiff failed to train Info–Line receptionists properly. Ferguson Affidavit, at ¶ 4; *see also* Exhibits K, N and U to 1995 Motion (affidavits of Info–Line receptionists).
- Plaintiff failed to properly prepare educational plans for veteran students. Ferguson Affidavit, at ¶ 5; *see also* Exhibits O and T to 1995 Motion (discussing complaints regarding Plaintiff's performance).
- Plaintiff failed to provide weekly educational reports in a timely fashion. Ferguson Affidavit, at ¶ 6.
- Plaintiff had a large number of absences. *Id.* at ¶ 7.
- Plaintiff failed to timely assist Maria Moreno and other students with their educational plans as corroborated by other employees. *Id.* at ¶ 10.
- Plaintiff failed to seek sufficient advance authorization for out-of-town travel associated with PTK and took more out-of-town trips for PTK than others. *Id.* at ¶ 7.
- Plaintiff permitted her PTK budget of $20,000 to be exceeded by $11,000. *Id.* at ¶ 8; *see also* Jepson Affidavit (Exhibit Q to 1995 Motion).

Ferguson also presented evidence that she reprimanded two white employees for similar violations: Peter Jepson was reprimanded for not turning in travel requests with ade-

quate notice, and Becky Huari for not informing Ferguson of absences. Ferguson Affidavit, at ¶ 15.

## DISCUSSION

### 1. *Plaintiff's Motion for Leave to Amend Complaint*

■ On November 2, 1995, Plaintiff moved for leave to amend her complaint to include additional allegations relating to the incidents originally complained of, to add several references to allegedly unlawful treatment of other employees, and to add a claim for violation of her First Amendment rights. *See* Plaintiff's Motion for Leave to Amend Plaintiff's Original Complaint [Doc. # 46].

Plaintiff's reasons proffered originally to justify the amendment, in their entirety, were:

Since Plaintiff filed her Plaintiff's Original Complaint in August 1993, many other and related wrongful acts by Defendants have occurred, not the least of which was Defendants['] attempted termination of Plaintiff's employment following her wrongful suspension from duties, and the attempt by Defendants through in-house college counsel to tamper with the grievance hearing process to Plaintiff's harm after Plaintiff had successfully appealed her termination, etc.

Plaintiff's Motion for Leave to Amend, at 2.

The matters Plaintiff's proposed amendment seeks to add are irrelevant to this case since, as Plaintiff contends in her Response to the 1995 Motion, this case has involved claims for relief only for the allegedly wrongful transfer in August 1992. Plaintiff's Response, at 6, 8. To the extent Plaintiff may be seeking to augment her allegations about the wrongs in the time period she has deemed relevant, the proposed amendment is futile and untimely. The defects in Plaintiff's claims, discussed *infra* in relation to Defendants' summary judgment motions, are not cured by the proposed amendment.

■ Moreover, Plaintiff's motion for leave to amend was filed more than two years after this action was brought, after the close of discovery, and after summary judgment mo-

tions have been filed. The amendment refers to events of which Plaintiff was aware months, if not more than a year, ago. It is too late to alter the nature and focus of the case. Nor may Plaintiff change her theory of the case after summary judgment motions have been filed. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075–76 (5th Cir.1994) (en banc).[7] Therefore, the Motion for Leave to Amend is **DENIED.**

The Court has also considered **Plaintiff's Motion for Extension of Time to Respond to Defendants' Opposition to Plaintiff's Motion for Leave to File an Amended Complaint** [Doc. # 53], and has in fact perused the Response [Doc. # 54] filed by Plaintiff. Nothing therein would alter the Court's decisions as to leave to amend or summary judgment. Therefore, this motion is **DENIED.**

## 2. *Summary Judgment Motions*

### A. *Legal Standard*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mutual Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Insurance Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Douglass v. United Servs. Auto. Ass'n,* 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79 F.3d 1415 (5th Cir.1996) (en banc); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass,* 65 F.3d at 459; *Little,* 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands,* 66 F.3d at 92; *Little,* 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on

7. Plaintiff's proposed amended complaint raises, for the first time, a First Amendment claim. Plaintiff alleges that Defendants retaliated against her because she exercised fundamental rights to free expression, privacy, and free speech and association, as secured by the state and federal constitutions. Plaintiff's proposed First Amended Original Complaint, at 17. This cause of action is not time-barred and may be asserted in separate action. However, while issues as to a First Amendment claim are not decided herein, the current record suggests that this claim is highly questionable under federal doctrines. Plaintiff's speech is focused on alleged adverse employment decisions concerning Plaintiff and not issues of public interest. This type of essentially private speech is not protected by the First Amendment. *See Dodds v. Childers,* 933 F.2d 271, 274 (5th Cir.1991).

which that party will bear the burden at trial. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).

### B. *Defendants' Motion for Partial Summary Judgment*

■ The 1994 Motion was filed on August 12, 1994. Plaintiff has failed to file any response over the course of more than a year and a half, despite receiving the motion when it was originally filed and despite Defendants' repeated comments about its pendency in subsequent motions, most recently in their 1995 Motion for Summary Judgment, and related memoranda of law. The Court therefore deems the 1994 Motion for Partial Summary Judgment ("1994 Motion") unopposed. *See* Local Rule 6(E). The moving party must still meet its burden to show entitlement to the relief it seeks. *Hibernia National Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985).

The 1994 Motion raises points that are supported by the law and the evidence of record and is therefore **GRANTED.**

*Statute of Limitations.* Plaintiff has complained that she was entitled to the promotion to Assistant Dean of Student Services, a position given to Diana Castillo by action of the HCCS Board of Trustees on May 30, 1991. Defendants argue that this failure-to-promote claim should be dismissed because it is barred by the statute of limitations.

■ Claims pursuant to Sections 1983 and 1981 are subject to a two year statute of limitations in Texas. Tex.Civ.Prac. & Rem. Code, § 16.003; *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 713 n. 22; *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir.1992); *Helton v. Clements,* 832 F.2d 332, 334 (5th Cir.1987). Therefore, under the two-year limitations period, Plaintiff was required to bring suit on this claim by May 30, 1993, approximately 2½ months before she in fact filed this case. The claim for failure to promote Plaintiff to the position of Assistant Dean of Student Services thus is time-barred and is dismissed.

*Section 1981 Claim.* Plaintiff has alleged in her complaint that Defendants violated 42 U.S.C. § 1981 because they acted to deny her "the benefits, privileges, terms, conditions and employment opportunities of her contractual relationship with HCCS by denying her promised and earned promotions and treating her differently based on her race." Original Complaint, at 16.

Section 1981 prohibits racial discrimination in the making and enforcement of contracts. "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To state a claim under Section 1981, Plaintiff must show intentional discrimination on account of race. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 714 (5th Cir.1994).

■ Plaintiff's Section 1981 claim fails for several reasons. First, Plaintiff's complaints, even if taken as true, do not establish that Defendants denied her the opportunity to form a "new and distinct employment relationship," as is required for a Section 1981 claim. *See National Ass'n of Gov't Employees,* 40 F.3d at 714; *Johnson v. Uncle Ben's Inc.,* 965 F.2d 1363, 1370 (5th Cir. 1992), *cert. denied,* 511 U.S. 1068, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994) (each rung on career ladder is not to be regarded as a different employment relation). Her allegations of harassment do not implicate a contractual relationship at all, and her allegations that Defendants discriminated when they failed to promote her and reassigned her to the Jackson Hill office do not involve the formation of a "new and distinct" relationship with her employer. Furthermore, Defendants are entitled to summary judgment because Plaintiff has offered no summary judgment evidence whatsoever that Defendants' actions were motivated by intentional discrimination on the basis of race. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–49 (5th Cir.1996). Conclusory al-

legations and unsubstantiated assertions of racial discrimination are not sufficient to create a genuine issue of material fact and defeat summary judgment. *See Douglass,* 65 F.3d at 459; *Little,* 37 F.3d at 1075. Finally, as stated above, Plaintiff's failure-to-promote claim is barred by the statute of limitations and therefore cannot serve as a basis for her Section 1981 claim.

Plaintiff's Section 1981 claim is therefore dismissed. Given this holding, the Court need not address Defendants' argument that Plaintiff's claim against HCCS for damages under 42 U.S.C. § 1981 is barred as a matter of law under *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 2721–22, 105 L.Ed.2d 598 (1989). The Court notes that the validity of *Jett* is questionable after the 1991 amendments to the Civil Rights Act. *See, e.g., Dennis v. County of Fairfax,* 55 F.3d 151, 156 n. 1 (4th Cir.1995); *La Compania Ocho, Inc. v. U.S. Forest Service,* 874 F.Supp. 1242, 1251 (D.N.M.1995).

***Due Process Claim.*** Plaintiff alleges that she was deprived of some property and liberty interests without due process, indicating a procedural due process claim, and possibly a substantive due process claim. *See* Plaintiff's Original Complaint, at 16–18. Her due process claims are brought pursuant to 42 U.S.C. § 1983.

■ Plaintiff has shown, and the record reflects, no protectable property interest or any liberty interest in her original job assignment. Plaintiff is not complaining of a loss of pay, nor has she been terminated. Although Plaintiff complains of reassignment to a new position at different campus, she had no protected property interest in any partic-

ular position or duties. Defendants, by contract, had the right to transfer Plaintiff to the job to which she was assigned in 1992. *See* Greer Affidavit and attached employment contracts (Exhibit 2 to 1994 Motion).[8] Plaintiff's claims that oral promises were made regarding the length of her employment or duties cannot bind the Defendants, since only Board of Trustees' action can bind HCCS. *Davis v. Duncanville Indep. Sch. Dist.,* 701 S.W.2d 15, 17 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); Tex.Educ.Code, § 130.084. Moreover, Plaintiff's allegations of loss of prestige or responsibility are also insufficient to state a claim, since these matters also are not protected property interests. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 997 (5th Cir.1992), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 201 (1992).

Plaintiff's failure to establish a protected property right means that she has no viable claim of either substantive or procedural due process. *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491; *Kinsey,* 950 F.2d at 997; *Brennan v. Stewart,* 834 F.2d 1248, 1255–57 (5th Cir.1988).[9]

■ Moreover, Plaintiff's claim for loss of liberty interest also fails, because neither her Original Complaint nor her affidavit filed in opposition to Defendants' 1995 Motion addresses any loss of employment or discharge, any stigmatization, or any charges made public by the employer. *See Kelleher v. Flawn,* 761 F.2d 1079, 1088 (5th Cir.1985) (citing *Wells v. Doland,* 711 F.2d 670, 676 (5th Cir. 1983)).[10]

8. Each year, Plaintiff "agreed to perform the services as COUNSELOR" and "agreed ... that the President of the [HCCS] shall have the right to assign such duties to [Plaintiff] at such locations as the Employer shall deem proper, and may, from time to time, assign or reassign the Employee to other or additional duties for which he/she is professionally certified or otherwise qualified to perform, provided no reduction in compensation occurs." *See, e.g.,* Plaintiff's Annual Professional Contract, 8/13/90 (attached to Greer Affidavit), at ¶ 2.

9. The proposed Amended Complaint does not cure these defects. In the proposed Amended

Complaint, Plaintiff alleges that the HCCS grievance procedure was unfair or lacked the appropriate due process protections. *See* Plaintiff's proposed Amended Complaint, at 13–14. However, Plaintiff's grievance in fact resulted in the Defendant HCCS reversing the recommendation that she be terminated. *See id.* at 13, ¶ 7. She still is employed at HCCS.

10. Plaintiff seeks, belatedly, to amend her complaint to allege events that apparently occurred after the completion of the chronology alleged in her Original Complaint. Specifically, Plaintiff complains that she was placed on probation, had two hearings, and was terminated and reinstat-

■ As to Plaintiff's claims for due process violations under the Texas Constitution, the Texas and United States Constitutions are to be construed the same. *Arrington v. County of Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992); *Price v. City of Junction, Tex.* 711 F.2d 582, 590 (5th Cir.1983); *Moore v. Port Arthur Independent School District,* 751 F.Supp. 671, 673 (E.D.Tex.1990). Therefore, her state constitutional claims fail as well.

■ *Immunity.* Plaintiff's claims for money damages against HCCS pled under the Texas Constitution cannot succeed as a matter of law. HCCS, as a governmental unit, is entitled to sovereign immunity. *Garcia v. Maverick County,* 850 S.W.2d 626, 628 (Tex.App.—San Antonio 1993, writ denied); *Bagg v. Univ. of Texas Medical Branch,* 726 S.W.2d 582, 584 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Therefore there are no grounds to award Plaintiff money damages from HCCS under state or federal law.

■ *Punitive Damages.* Plaintiff's punitive damage claims sought under Section 1983 against HCCS also are barred as a matter of law. As a local governmental unit, HCCS is treated the same as a municipality, *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 659, 98 S.Ct. 2018, 2019–20, 56 L.Ed.2d 611 (1978), and is not liable for punitive damages. *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Therefore the claims for punitive damages asserted by Plaintiff are dismissed.

## C. *Defendants' Motion for Summary Judgment*

The Defendants filed a second Motion for Summary Judgment ("1995 Motion") on May 12, 1995. Plaintiff's Response was filed on August 31, 1995. Because of the Court's rulings above based on the 1994 Motion, Plaintiff's only remaining claim is an equal protection claim against Defendants in their individual and official capacities, brought pursuant to Section 1983. For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's equal protection claims are dismissed.

■ Initially, a plaintiff bringing a case of race discrimination pursuant to Section 1983 must establish a prima facie case which, if established, raises a presumption of discrimination.[11] The defendant must then rebut the plaintiff's prima facie proof by articulating a legitimate, nondiscriminatory reason for its actions. If the defendant satisfies this burden of production, the presumption disappears, and the plaintiff must prove that the proffered reasons are a pretext for discrimination. The plaintiff retains the ultimate burden of persuasion throughout the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir. 1995); *Marcantel v. State of La., Dep't of Transp. and Dev.,* 37 F.3d 197 (5th Cir.1994).

■ Assuming *arguendo* that Plaintiff has established a prima facie case of discrimination, Defendants nevertheless are entitled to summary judgment, because they have articulated legitimate, non-discriminatory reasons for all of their employment decisions which Plaintiff has not adequately rebutted. *See St. Mary's,* 509 U.S. at 506–08, 113 S.Ct. at 2747; *Meinecke,* 66 F.3d at 83. For example, the affidavits proffered by Defendants state, among other things,

---

ed. She also states that Chancellor Harding, who succeeded Green, "succumb[ed] to pressure reportedly applied by Durnovo, Williamson, and Philbin," rescinded the decision to reinstate Plaintiff, and assigned her to another campus within the system. Plaintiff's proposed First Amended Complaint, at 13–14.

None of the additional allegations in the Plaintiff's proposed First Amended Original Complaint provides a basis for creation of any property or liberty interests, and therefore none address the defects in the due process claims asserted originally. Therefore the proposed amendment would be futile in these respects.

11. Plaintiff relies, as she must, on 42 U.S.C. § 1983 coupled with the equal protection guarantee of the federal constitution for her race-based claim. A claim under this statute is to be proven under the same standards as Title VII, 42 U.S.C. § 2000e *et seq. Wallace,* 80 F.3d at 1046–48; *Wilkerson v. Columbus Separate Sch. Dist.,* 985 F.2d 815, 817 (5th Cir.1993). Furthermore, the same requirements are applied to an equal protection challenge under the Texas constitution as to those under the federal constitution. *Reid v. Rolling Fork Public Utility Dist.,* 979 F.2d 1084, 1089 (5th Cir.1992).

that Plaintiff was contacted during her leave of absence in order to determine when she would return to work, that she was transferred to Jackson Hill in order to place her in a work environment where she would not have the perception of harassment, and that there were numerous problems with Plaintiff's job performance. *See supra* at 1283–1286. Plaintiff has failed to sufficiently rebut the reasons articulated by Defendants because she has proffered no material facts which establish that these adverse actions were motivated by her race or that the Defendants' explanations are a pretext for racial discrimination. As for Defendants Durnovo, Castillo, Green, Williamson and Ferguson, Plaintiff has presented no evidence whatsoever that these Defendants' actions were motivated by racial animus. The Court will not assume that Plaintiff could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075.[12]

As for Defendant Engle, Plaintiff's only complaint is that when she approached him about why she had not been given financial assistance to attend the PTK meeting, he allegedly stated to her that PTK should have a white advisor, a statement he allegedly had also made previously. Original Complaint, at 7–8.[13] Assuming the truth of this allegation for the purposes of this Motion, the statement is merely a stray remark, and is insufficient to establish discriminatory intent or rebut the Defendants' explanations for the employment decisions in issue. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996). Furthermore, Plaintiff's own explanation of Engle's motives undercuts her race claim, since she asserts that Engle was angry at her because of their previous romantic involvement. Therefore, Plaintiff's allegations against Engle do not raise a genuine issue of material fact sufficient to preclude summary judgment in favor of Defendants.

Plaintiff retains the ultimate burden of persuasion throughout the case, and it is her burden to show that she was discriminated against *on the basis of race*. *Hicks*, 509 U.S. at 506–10, 113 S.Ct. at 2747–48. Plaintiff has failed to meet this burden as to any of the Defendants. Her evidence that there were disputes over her job performance and that Defendants made arguably adverse employment decisions about her is insufficient to defeat Defendants' summary judgment motion because it does not constitute evidence of racial discrimination. Moreover, her belief that Defendants' motives for these actions are racially-based is speculative and conclusory. Plaintiff's burden on this summary judgment motion may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass*, 65 F.3d at 459; *Little*, 37 F.3d at 1075.

Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). Since Plaintiff has not put forth any credible proof that the Defendants purposely discriminated against her based on her race nor sufficiently rebutted Defendants non-discriminatory explanations, the Court will not assume that the Plaintiff could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075.

---

**12.** It is not clear to the Court that the actions by these Defendants are in fact "adverse" employment actions. However, the Court will assume for the purposes of this motion that this element of plaintiff's prima facie case is satisfied, as are the other elements.

**13.** Assuming the Court were to look at the issue of the decision to change PTK advisors, Defendants have presented evidence that James Engle in fact did not make the decision at issue. Engle Affidavit (Exhibit I to 1995 Motion), at ¶ 15. The decision to select a new PTK lead advisor was made by the group of advisors themselves, and not by any of the Defendants. Ferguson Affidavit (Exhibit J to 1995 Motion), at ¶ 14. Furthermore, Plaintiff's claim of racial discrimination is weakened by the fact that James Sparks, an African–American, was selected to become the new PTK lead advisor but declined the position. Williamson Affidavit (Exhibit V to 1995 Motion), at ¶ 7. Plaintiff's objection to this paragraph of Williamson's Affidavit on hearsay grounds is overruled because the affidavit is sufficiently based on personal knowledge.

This case involves a dispute between an employee, her supervisors, and her co-workers; it is not a case of racial discrimination. Summary judgment in favor of Defendants is therefore granted as to all of Plaintiff's remaining claims.[14]

■ Moreover, summary judgment is also appropriate in favor of the individual Defendants because they are entitled to qualified immunity on Plaintiff's federal claims. Qualified immunity shields government officials performing discretionary functions from liability for suits brought against them in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir.1995). The qualified immunity doctrine applies to all claims which arise under civil rights laws. *See generally Wicks v. Miss. State Employment Services*, 41 F.3d 991, 996 n. 21 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). Plaintiff must allege with specificity facts that, if proven, would show that a public official violated a "clearly established" statutory or constitutional rights. *See Wicks v. Miss. State Employment Serv.*, 41 F.3d 991, 995 (5th Cir.1995). The Court then must decide whether a defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *Gunaca v. State of Tex.*, 65 F.3d 467, 473–74 (5th Cir.1995); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992). Even if an official's conduct violated a clearly established constitutional right, he or she is entitled to qualified immunity if the conduct was objectively reasonable. *Salas*, 980 F.2d at 310.[15]

■ All of the Defendants in this suit were performing discretionary functions. *See* Castillo Affidavit, at ¶ 22; Durnovo Affidavit, at ¶ 5; Engle Affidavit, at ¶ 17; Ferguson Affidavit, at ¶ 16; Williamson Affidavit, at ¶ 9; Green Affidavit, at ¶ 13. Therefore, even if Plaintiff could state a claim for a civil rights violation, which Plaintiff has not, immunity would attach. This is equally true as to Plaintiff's state claims.[16]

### 3. *Defendants' Motion to Exclude Plaintiff's Expert Testimony*

Given the Court's ruling above granting summary judgment in favor of Defendants as to all of Plaintiff's claims, there is no need for

---

**14.** Assuming *arguendo* that Plaintiff could prove a violation of her constitutional rights by any of the Defendants, her Section 1983 claim against Defendants in their official capacities would still fail. The real party in interest in an official capacity suit is the governmental entity, and not the named official. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991). Consequently, the claims asserted against the individual Defendants in their official capacities are actually claims against HCCS. In order to state a claim against a municipal defendant under Section 1983, Plaintiff must sufficiently plead the existence of a policy or custom which was the "moving force" behind the deprivation of her constitutional rights. *Monell v. Dep't of Social Serv. of City of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Plaintiff has neither alleged nor offered any evidence of an HCCS policy that contributed to Plaintiff's alleged harms. Indeed, the HCCS policy explicitly prohibits discrimination. Green Affidavit (Exhibit L to 1995 Motion). When asked whether the board of trustees of HCCS had any policy, custom, or practice that contributed to her alleged discrimination, Plaintiff simply replied "I don't know that." Plaintiff's Deposition (Exhibit A to 1995 Motion), Vol. II, at 11–12. Since Plaintiff has not sufficiently plead the existence of a policy or custom which was the "moving force" behind the alleged deprivation of her constitutional rights, summary judgment as to her claims against HCCS, and against the individual Defendants in their official capacities, is proper on this ground alone.

**15.** Whether such conduct violated clearly established law, so as to preclude the application of qualified immunity, is essentially a legal question. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)).

**16.** Under Texas common law, government employees have immunity from personal liability while performing discretionary duties in good faith within the scope of their authority. *Lazaro v. Univ. of Texas Health Science Center*, 830 S.W.2d 330, 332 (Tex.App.—Houston [14th Dist.] 1987, writ denied). This immunity extends to Texas constitutional claims. *Bagg v. Univ. of Texas Medical Branch at Galveston*, 726 S.W.2d 582, 584, n. 1, 586, n. 4 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). A state employee who "is required to pass on facts and determine his actions by the facts found" is performing duties that are "quasi-judicial" in nature and are discretionary. *Lazaro*, 830 S.W.2d at

the Court to address this motion. Therefore, Defendants' **Motion to Exclude Plaintiff's Expert Testimony** [Doc. # 42] is **DENIED AS MOOT.**

## CONCLUSION

In summary, as ordered previously, *see* Doc. # 55:

- Plaintiff's Motion for Leave to Amend Plaintiff's Original Complaint [Doc. # 46] is **DENIED;**
- Plaintiff's Motion for Extension of Time to Respond to Defendants' Opposition to Plaintiff's Motion for Leave to File an Amended Complaint [Doc. # 53] is **DENIED;**
- Defendants' Motion for Partial Summary Judgment [Doc. # 13] is **GRANTED;**
- Defendants' Motion for Summary Judgment [Doc. # 29] is **GRANTED;** and,
- Defendants' Motion to Exclude Plaintiff's Expert Testimony [Doc. # 42] is **DENIED AS MOOT.**

332. All of the supervisory, personnel, and employment decisions made by the Defendants are "quasi-judicial" and within the scope of their authority.

As stated previously, *see supra* at 1291, Defendants have proffered good-faith, non-discrimina-

tory explanations for all of their adverse employment decisions regarding Plaintiff, which Plaintiff has failed to adequately rebut. Therefore, Defendants are immune from suit under Texas common law.