COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 YSLETA
 INDEPENDENT SCHOOL DISTRICT,
  
                             Appellant,
  
 v.
  
 GUSTAVO MONARREZ AND JOSE RODRIGUEZ,
  
                             Appellees.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00217-CV
  
 Appeal from the
  
 County Court at Law No. Five
  
 of El Paso County, Texas
  
 (TC# 2000-118)
 
 




 

O P I N I O N

 

This is an appeal from a jury verdict
in favor of Appellees.  For the reasons stated, we affirm.  

I.  SUMMARY OF THE EVIDENCE








Appellees, Gustavo Monarrez
(AMonarrez@) and Jose Rodriguez (ARodriguez@), were employed by Appellant, Ysleta Independent School District (Athe District@), as mechanics in the District=s transportation department.  On Friday, March 26, 1999, Monarrez, Rodriguez, and several other employees went to a
local VFW hall for drinks after work.  Appellees had signed up to work on Saturday.  Appellees decided
to leave between 10:30 p.m. and 11:30 p.m. 
Rodriguez was not feeling well after consuming ten to twelve beers and
thought he might be late the next morning. 
He asked Monarrez to punch his time card for
him if he was late because their supervisor would get mad if he was tardy.  

The next morning Monarrez
punched Rodriguez= time card around 6:30 a.m. 
Rodriguez did not wake up until 9:30 a.m. and was not feeling well.  He called Monarrez
and told him he would not make it to work and asked him to punch him out.  Rodriguez promised that they would talk to
their supervisor on Monday and get the matter cleared up. 

That Monday, Rodriguez reported to
work, but Monarrez did not because his daughter was
ill.  Rodriguez decided to wait until Monarrez was present to talk to their supervisor, Mr.
Romero.  The following day, Rodriguez
explained what had happened to Romero.  Monarrez also spoke with Romero and apologized.  Later that day, Appellees
were given Acounseling sheets,@ a form of discipline.  On April 16, 1999, Appellees
were suspended.  On April 28, 1999, Appellees were terminated by letter, which listed the
reasons for termination as immorality, insubordination, fraud, failure to
comply with Board policies, and reasons constituting good cause. 








After learning that at least six
other female employees of the District were involved in similar incidents but
received less severe discipline, Appellees filed suit
alleging that their gender was a motivating factor in the District=s decision to terminate them.  Appellees
specifically filed suit under Section 21.051 of the Texas Labor Code, which
prohibits employment discrimination.  The
case was tried to a jury and at the close of Appellees= evidence, the District moved for
directed verdict, which was denied.  The
District re-urged the motion at the close of all of the evidence and before the
case was submitted to the jury, and the motion was again denied.  The jury returned a verdict in favor of Appellees.  The jury
awarded Rodriguez lost past and future wages and employee benefits in the
amount of $74,000 and mental anguish damages in the amount of $175,000.[1]  The jury awarded Monarrez
lost past and future wages and employee benefits in the amount of $49,500 and
mental anguish damages in the amount of $175,000.  In addition, the jury awarded $30,000 in
attorneys= fees.  The District filed a Motion for New Trial and
a Motion for Judgment Notwithstanding the Verdict.  Both motions were denied by the trial court
and judgment was entered in favor of Appellees.  This appeal follows.

II.  DISCUSSION

Appellant presents four issues on
appeal.  Appellant essentially challenges
the legal and factual sufficiency of the evidence:  1) to support a prima facie case that it
violated the Texas Commission on Human Rights Act; 2) to prove that its
legitimate, nondiscriminatory reasons for its actions were mere pretexts for
discrimination; 3) to support the mental anguish damages; and 4) to support the
attorneys= fees awarded.  We begin with a discussion of the standard of
review.

A. 
Legal and Factual Insufficiency








In considering a Ano evidence@ legal insufficiency issue, we
consider only the evidence and inferences that tend to support the jury=s findings and disregard all evidence
and inferences to the contrary.  See Weirich v. Weirich, 833
S.W.2d 942, 945 (Tex. 1992); Pool v. Ford Motor Co., 715 S.W.2d 629, 634‑35
(Tex. 1986); Garza v. Alviar, 395 S.W.2d 821,
823 (Tex. 1965); Texas Tech Univ. Health Sciences Ctr. v. Apodaca, 876 S.W.2d 402, 411-12 (Tex. App.--El Paso
1994, writ denied).  If more than a scintilla
of evidence supports the questioned finding, the Ano evidence@ issue fails.  See Tseo v.
Midland Am. Bank 893 S.W.2d 23, 25 (Tex. App.--El Paso 1994, writ denied); Hallmark
v. Hand, 885 S.W.2d 471, 474 (Tex. App.--El Paso 1994, writ denied).  








An Ainsufficient evidence@ or factual insufficiency issue
involves a finding that is so against the great weight and preponderance of the
evidence as to be manifestly wrong.  The
test for factual insufficiency issues is set forth in In
re King=s Estate, 150 Tex. 662, 244 S.W.2d 660,
661-62 (1951).  In reviewing an issue
assert­ing that a finding is against the great weight and preponder­ance of the
evi­dence, we must consider all of the evidence, both the evidence which tends
to prove the existence of a vital fact, as well as evidence which tends to
disprove its existence.  It is for the
jury to determine the weight to be given to the testimony and to resolve any
conflicts in the evidence.  See
Carrasco v. Goatcher, 623 S.W.2d 769, 772 (Tex.
App.--El Paso 1981, no writ).  The jury=s finding should be sustained if
there is some probative evidence to support it and provided it is not against
the great weight and preponderance of the evidence.  See id.  Thus, we cannot substitute our judgment for
that of the fact finder even if we find a fact contrary to that found by the
jury.  If, however, the verdict is so
contrary to the great weight and preponderance of the evidence as to be
manifestly unjust, the issue should be sustained.

 

B. 
Texas Commission on Human Rights Act

Appellees sued under the Texas Commission on
Human Rights Act (ATCHRA@), which prohibits discrimination in employment based on the
basis of race, color, disability, religion, sex, national origin, or age.  Dillard Dept. Stores, Inc. v. Gonzales,
72 S.W.3d 398, 406 (Tex. App.--El Paso 2002, pet. denied); see also, Tex. Lab. 
Code Ann. '' 21.001, 21.051 (Vernon Supp. 2002).  The TCHRA is modeled after federal civil
rights law.  NME Hospitals, Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999).  One express purpose of the TCHRA is to
provide for the execution of the policies of Title VII of the Civil Rights Act
of 1964 and its subsequent amendments.  Tex. Lab. Code Ann. '' 21.001(1) (Vernon Supp 2002).  The TCHRA purports to correlate Astate law with federal law in the
area of discrimination in employment.@ 
Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 485 (Tex.
1991).  Thus, in light of the legislature=s express purpose, we look to
analogous federal precedent for guidance when interpreting the Texas Act.  Rennels, 994
S.W.2d at 144.

Section 21.051 of the Texas Labor
Code defines the types of employment discrimination the TCHRA was designed to
suppress.  Section 21.051 provides: 

An employer commits an unlawful
employment practice if because of race, color, disability, religion, sex,
national origin, or age the employer:

 

(1) fails or refuses to hire an individual, discharges
an individual, or discriminates in any other manner against an individual in
connection with compensation or the terms, conditions, or privileges of
employment; or








(2) limits, segregates, or classifies an employee or
applicant for employment in a manner that would deprive or tend to deprive an
individual of any employment opportunity or adversely
affect in any other manner the status of an employee.

 

Tex. Lab.
Code Ann. ' 21.051 (Vernon 2002).  

In Issue No.
One, Appellant challenges the legal and factual sufficiency of the evidence to
support a prima facie case that it violated the Texas Commission on Human
Rights Act.  Specifically, Appellant
argues that Appellees failed to present any evidence
that they are members of a protected class and that they were either replaced
by female employees or that similarly situated female employees were treated
more favorably. 








Appellant
urges this Court to adopt the McDonnell Douglas burdenshifting
scheme. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under that framework, a three step process is
implemented in which:  (1) the plaintiff
proves his prima facie case by a preponderance of the evidence; (2) the defendant
rebuts the presumption of intentional discrimination arising from the prima
facie case by articulating legitimate, non-discriminatory reasons for the
challenged action; and (3) the plaintiff counters by offering evidence that the
legitimate, non-discriminatory reasons are really a pretext for
discrimination.  Casarez
v. Burlington Northern/Santa Fe Co., 193 F.3d 334, 337 (5th Cir.1999)
(footnote and citations omitted).            However,
when a case has been fully tried on its merits, as here, we do not focus on the
burden shifting scheme described above.  Rubinstein
v. Adm=rs of Tulane Educ.
Fund, 218 F.3d 392,
402-03 (5th Cir. 2000); Rutherford v. Harris County, Tex. 197 F.3d 173,
180 (5th Cir. 1999); Coastal Mart, Inc. v. Hernandez, 76 S.W.3d 691
(Tex. App.--Corpus Christi 2002, pet. dism=d by agr.);
Wal-Mart Stores, Inc. v. Canchola, 64 S.W.3d 524,
536-37 (Tex. App.--Corpus Christi 2001, Tex. R . App. P. 53.7(f) motion filed);
but see, Cox & Smith Inc. v. Cook, 974 S.W.2d 217, 223 (Tex.
App.--San Antonio 1998, pet. denied) (applying the McDonnell Douglas
burden-shifting scheme to cases tried on the merits); Austin State Hosp. v.
Kitchen, 903 S.W.2d 83, 90-91 (Tex. App.--Austin 1995, no writ) (applying
the McDonnell Douglas burden-shifting scheme to cases tried on the
merits).  Once the case has been
submitted to the jury, Athe adequacy of a party=s showing at any particular stage of
the McDonnell Douglas ritual is unimportant.@ 
Travis v. Bd. of Regents of the Univ. of Texas Sys., 122 F.3d
259, 263 (5th Cir.1997) (quoting Molnar v. Ebasco
Constructors, Inc., 986 F.2d 115, 118 (5th Cir.1993)).  We need not parse the evidence into discrete
segments.  Rubinstein, 218 F.3d at
402.  AInstead, we inquire whether the
record contains sufficient evidence to support the jury=s ultimate findings.@ 
Smith v. Berry Co., 165 F.3d 390, 394 (5th Cir.1999) (citations
omitted).








In a TCHRA
case, the employee is not required to prove that his gender was the sole reason
or even a substantial reason for the employment action.  Quantum Chemical Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001).  The employee only needs to show that his
gender was a motivating factor in the employer=s decision.  Id. 
If the employee=s gender was a factor in the decision, illegal discrimination
occurs.  Id.        The District first argues that the
evidence does not support the verdict because Appellees
did not establish that they were members of a protected class, i.e., they did
not prove they were men.  Antonio Romero,
the District=s coordinator for transportation,
testified that all of the mechanics were male. 
Likewise, when asked whether the mechanics were male, Rodriguez
responded, AWe=re all men.@ 
When questioned about the complaint he filed with the Equal Employment
Opportunity Commission, Rodriguez testified that the EEOC=s investigation concluded that A[a]ll the
women were doing it and we were the first two males that did it.@ 
Appellees both stated that they were married
and testified about their wives. 
Rodriguez= wife, Lidia Armendariz,
was also a witness in the case.  In
addition, Appellees were repeatedly referred to as AMr. Rodriguez@ and Mr. Monarrez@ throughout the trial and the
termination letters from the District were addressed in the same manner.  In considering only the evidence and
inferences that tend to support the jury=s findings, we find more than a scintilla
of evidence to support the finding that Appellees are
men.  Likewise, after carefully reviewing
the entire record, we find there is some probative evidence to support the
finding that Appellees are male and that the finding
is not against the great weight and preponderance of the evidence.  This portion of Issue No. One is overruled. 








The District
next argues that Appellees failed to present any
evidence that they were either replaced by female employees or that similarly
situated female employees were treated more favorably.[2]  The evidence established that female
employees of the District=s transportation department frequently clocked in their
co-workers and that those employees were not always disciplined for doing
so.  Romero testified that there was a
problem with clocking-in in the transportation department, not with the male
mechanics, but with the female bus drivers and attendants.  He admitted that not one male had received
any written reprimand for clocking-in violations prior to Appellees= terminations.  Romero also admitted that Appellees
had violated the same policy that the female employees violated and that those
females were all still employed by the District.  

Rodriguez
testified that female employees did the same thing he did, yet those female
employees were not fired.  Armendariz, who is also an employee of the District,
testified that in some instances, the females were not even disciplined for
clocking-in other employees.  While she
received a reprimand for punching another female employee=s card, the employee whose card she
punched did not receive a reprimand. 

Another
female employee of the transportation department, Celia Aguilar, testified that
she clocked-in for other employees in the presence of her coordinator, Jerry
Venable.  Aguilar testified that she was
not told that clocking-in for other employees was a violation of the District
policy, nor was she reprimanded for doing so. 
She also stated that she witnessed female employees on more than one
occasion clock-in for others and that none of those female employees were
terminated or suspended. 








Also, Ofelia
Gallegos, another employee of the transportation department, frequently
clocked-in for her daughter, Minerva Ortega. 
In some instances, Gallegos clocked-in for Ortega when Ortega was not
yet present for work.  Armendariz testified that it was common knowledge in the
transportation department that Gallegos clocked in for her daughter. 

The jury was
charged that they could Ainfer that the employer committed an unlawful employment
practice from evidence that the employer discharged the plaintiffs for
violating work rules and regulations but did not discharge similarly-situated
individuals of a different gender who violated the same work rules and regulations.@ 
In considering only the evidence and inferences that tend to support the
jury=s findings, we find more than a
scintilla of evidence to support the finding that Appellees= gender was a motivating factor in
the District=s termination.  This portion of Issue No. One is overruled. 

After
carefully reviewing the entire record, we find there is some probative evidence
to support the finding that Appellees= gender was a motivating factor in
the District=s termination and that the finding is
not against the great weight and preponderance of the evidence.  Issue No. One is overruled in its entirety.[3] 

C.  Mental Anguish Award








In Issue No.
Three, Appellant alleges that the trial court erred in denying its Motion for
Judgment Notwithstanding the Verdict and its Motion for New Trial on the issue
of mental anguish damages because the evidence is legally and factually
insufficient to support the jury=s award.  In addressing mental anguish damages we are
guided by the Texas Supreme Court=s decision in Saenz v. Fidelity
and Guar. Ins. Underwriters, 925 S.W.2d 607 (Tex. 1996) and our own opinion
in Worsham Steel Co. v. Arias, 831
S.W.2d 81 (Tex. App.--El Paso 1992, no writ). 
Mental anguish has been defined in such a way as to imply:

[A] relatively high degree of mental pain and
distress; it is more than mere disappointment, anger, resentment, or
embarrassment, although it may include all of these, and it includes mental
sensation of pain resulting from such painful emotions as grief, severe
disappointment, indignation, wounded pride, shame, despair and/or public
humiliation.

 

Worsham Steel, 831 S.W.2d at 85‑86 (citing Trevino
v. Southwestern Bell Tel. Co., 582 S.W.2d 582, 584 (Tex. Civ. App--Corpus Christi 1979, no writ)). 

In Saenz
v. Fidelity and Guaranty Insurance Underwriters, the Supreme Court
reaffirmed Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995), and
found that mental anguish damages could not be awarded without either Adirect evidence of the nature,
duration, or severity of [plaintiffs=] anguish, thus establishing a
substantial disruption in the plaintiffs= daily routine,@ or other evidence of A>a high degree of mental pain and
distress= that is >more than mere worry, anxiety,
vexation, embarrassment, or anger.=@ 
Saenz, 925 S.W.2d at 614 (citing Parkway, 901 S.W.2d at
444).  Not only must there be evidence of
the existence of compensable mental anguish, there must also be some evidence
to justify the amount awarded.  Saenz,
925 S.W.2d at 614.  








While there
was no evidence of duration, we find there was more than a scintilla of evidence
on the severity of Appellees= anguish.  Rodriguez testified that after he was
terminated, he was very depressed.  He
got upset with his wife and children and he would not talk to them.  Rodriguez stated that he was under pressure
and was scared.  He stated that the job
with the District was the only one he had ever had and he did not know where to
start looking for another one.  Rodriguez
could not sleep and could not be with his wife. 
He was short-tempered and always upset. 
As a result of the termination, he lost his children=s health insurance and they almost
lost their house.  Rodriguez was forced
to sell a piece of property to pay bills. 
He also had to borrow money and food from family members.  Armendariz
testified that Rodriguez would not eat, would not communicate, and stopped
going out with the family. 

Monarrez
testified that after he was terminated, his behavior changed and that his
relationship with his wife was affected. 
He felt terrible.  He became more
aggressive with his children and he almost got divorced.  Monarrez testified
that he became sick of his nerves and was prescribed medicine to help him
sleep.  He also had to borrow money from
his family.  Monarrez
sold his two vehicles, which were his only means of transportation, and he
cashed in his annuity. 

In reviewing
only the evidence and inferences that tends to support the jury=s findings, we conclude that there
was more than a scintilla of evidence for the jury to conclude that Appellees suffered compensable mental anguish.  After carefully reviewing the entire record,
we find there is some probative evidence to support the mental anguish awards
and that the finding is not against the great weight and preponderance of the
evidence.  Issue No. Three is overruled
in its entirety. 

D.  Attorneys= Fees








In Issue No.
Four, the District alleges that the trial court erred in denying its Motion for
Judgment Notwithstanding the Verdict on the issue of attorneys= fees because the evidence is legally
and factually insufficient to support the jury=s award.  Courts have uniformly held that any award of
attorney=s fees, pursuant to statute or under
common law, is within the discretion of the trial court.  Absent a showing of an abuse of discretion,
the award or failure to award fees will not be disturbed on appeal.  See Amoco Production Co. v. Smith, 946
S.W.2d 162, 165 (Tex. App.--El Paso 1997, no writ); Simms v. Lakewood
Village Property Owners Ass=n, Inc., 895 S.W.2d 779, 787 (Tex.
App.--Corpus Christi 1995, no writ); Houston Lighting & Power Co. v.
Dickinson Indep. School Dist., 641 S.W.2d 302,
311 (Tex. App.--Houston [14th Dist.] 1982, writ ref=d n.r.e.); Fowler
v. Stone, 600 S.W.2d 351, 353 (Tex. Civ.
App.--Houston [14th Dist.] 1980, no writ); Stegall
v. Stegall, 571 S.W.2d 564, 566 (Tex. App.--Fort
Worth 1978, no writ).

Here, Appellees= attorney testified that three attorneys had participated in
the case and that about 155 man-hours had been expended in preparing and trying
the case.  He testified that the usual
and customary fee for attorneys in El Paso handling employment cases varied
from $125 to $300 per hour depending on the experience of the attorney, the
complexity of the case, and whether the attorney is board certified.  He stated that they had recently tried two
employment discrimination suits in federal court and were awarded $150 and $165
per hour, respectively.  He testified
that $125 per hour was a reasonable fee for this case, but based on the
customary fee of attorneys, it was on the Alower end of the scale.@








The jury was
instructed on the factors relevant to measuring attorneys= fees and awarded $30,000.  Based on the testimony elicited, the jury
could have awarded fees in the range of $19,375 ($125 multiplied by 155 hours)
to $46,500 ($300 multiplied by 155 hours). 
There was more than sufficient evidence to support the jury=s award and the trial court did not
abuse its discretion in entering judgment awarding the amount of fees found by
the jury.  Issue No. Four is overruled.

Having
overruled each of Appellant=s issues on review, we affirm the judgment of the trial
court.

September 26, 2002                                                             

 

 

 

                                                RICHARD
BARAJAS, Chief Justice

 

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
We note that Appellant does not challenge the
lost past and future wages and employee benefits awards on appeal. 





[2]
Appellees note that the evidence which demonstrates they were
treated differently from female employees who violated the same rule is
relevant to both the prima facie case portion of the McDonnell-Douglas
analysis and the ultimate question of whether their gender was a motivating
factor in the District=s termination. 





[3]
Because we find that the evidence supports the
jury=s ultimate finding, that Appellees= gender was a motivating factor in the
District=s termination, we need not address Issue No. Two, which challenges
legal and factual sufficiency of the evidence to prove that its legitimate,
nondiscriminatory reasons for its actions were mere pretexts for
discrimination.