United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 4, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

m 03-60929
Summary Calendar

JOHNNY TROTTER, JR.,

Plaintiff-Appellant,

VERSUS

BPB AMERICA, INC.,
DOING BUSINESS AS BPB CELOTEX,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
m 4:02-CV-74

Before SMITH, DEMOSS, and STEWART,
Circuit Judges.

JERRY E. SMITH, Circuit Judge.*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiff Johnny Trotter, Jr., appeals *pro se* a summary judgment in his title VII suit, maintaining that he has established a genuine issue of fact regarding whether the stated reason for his discharge by his employer, BPB America, Inc., doing business as BPB Celotex ("BPB"), was mere pretext. We affirm.

I.

BPB hired Trotter, who is black, in July 1998 as a laborer and then as an inspector. As

BPB suffered periodic cutbacks and layoffs, Trotter was frequently reassigned, and his position fluctuated. In October 2001, he learned that because of his lack of seniority, he was on the list of employees to be laid off. In preparation for the layoff, he was reassigned from inspector to floor sweeper and laborer.

On October 17, 2001, Trotter had a verbal dispute with the union president, Roger Williams, regarding his reassignment. The dispute escalated, verbal threats were made, and, according to Williams, Trotter shoved him. Trotter flatly denies ever touching Williams. Following the altercation, both men were taken into the office of plant superintendent Berry Smith and interviewed. Smith did not take any disciplinary action, because there were no witnesses, though both men were warned about causing further disturbances and then were ordered to return to work.

Shortly after leaving his office, Smith noticed Williams, Hicks, and Trotter arguing once again on the floor. Smith intervened and separated them, ordering them to return to work. Williams and Hicks complied, but Trotter began to argue with Smith, who then ordered Trotter to come with him out of the plant; yet again, Trotter ignored Smith's instruction. Trotter admits cursing at and insulting Smith. Ultimately, they had a physical altercation and had to be separated by third parties. A dispute of fact exists regarding which man was the initial physical aggressor, though each admits to having hit the other at some point. Immediately following the fight, Smith fired Trotter.

Believing himself to be the victim of racial discrimination, Trotter timely filed a charge with the Equal Employment Opportunity Commission, which issued a right-to-sue letter.

Trotter sued, seeking recovery under title VII, 42 U.S.C. § 2000e-2. After discovery, BPB successfully moved for summary judgment.

## II.

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there are no actual disputes as to any material fact. If the nonmovant then fails to set forth specific facts to support his allegations, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmovant must "go beyond the pleadings . . . and designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment is appropriate even if the nonmovant brings forth evidence in support of its allegations, if the evidence is insufficient for a reasonable jury to find for that party. "The mere existence of a scintilla of evidence in support of plaintiff's position" is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We review a summary judgment *de novo*. *Meditrust Fin. Serv. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

## III.

A plaintiff alleging racial discrimination under title VII in the absence of direct evidence must make out a *prima facie* case of discrimination. *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir. 1993). Plaintiff can make out a *prima facie* case if he proves that he (1) was a member of a protected class; (2) was qualified for the position; (3) suffered adverse employment action; and (4) was replaced by someone outside the pro-

tected class or that similarly situated individuals outside the protected class were treated more favorably. *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

Under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), once a plaintiff has established a *prima facie* case, the burden of production is on the defendant to "articulate some legitimate, nondiscriminatory reason" explaining defendant's conduct.[1] If defendant is able to articulate such a reason, the plaintiff must make a showing sufficient for a jury to find that the reason was mere pretext and discrimination was the true motivation. *Bodenheimer v. P.P.G. Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1994). If a plaintiff fails to satisfy his burden of proof in either the first or third step, his claim fails as a matter of law.

The district court found that Trotter had established a *prima facie* case for discrimination, so the burden shifted to BPB to proffer a nondiscriminatory reason for termination.[2] BPB maintains that Trotter was fired because of insubordination and fighting with his boss, both of which are grounds for termination in BPB's General Rules of Conduct, which Trotter read and signed in 1998. The timing and circumstances surrounding Trotter's firing support BPB's contention that Trotter was fired for insubordination rather than on account of his race.[3]

With BPB's having offered this legitimate reason for termination, the burden returned to Trotter to demonstrate that the reason was pretext. Trotter may meet this threshold by proving that an issue of material fact exists through circumstantial evidence (i.e., by demonstrating that an issue exists that BPB's proffered reason is a pretext for discrimination, or by providing direct evidence of discrimination). *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). The district court found that Trotter had failed to offer any real evidence and thus failed to meet his burden of production in step three.

Trotter objects in his *pro se* brief, maintaining that several comments Smith made during and after his employment, and Smith's refusal to fire white workers who engaged in fighting, provide sufficient evidence to call into question BPB's rationale. Trotter does not provide sufficient evidence to cast doubt on BPB's reason for its conduct.

---

[1] The burden-shifting analysis of *McDonnell Douglas* was reaffirmed in *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000).

[2] The district court found that Trotter was able to establish that, as a black employee, he was a member of a protected class and was qualified for the position for which he was discharged. Trotter also established a genuine fact issue as to whether his white superintendent was treated more favorably (because Smith, too, participated in the brawl). Although there is a question whether Smith was "similarly situated," we agree with the district court that, when read in a light most favorable to Trotter, existing evidence establishes a *prima facie* case of discrimination.

[3] Trotter was fired immediately following the altercation with his boss, which occurred on the same day as his altercation with Williams, a senior employee. Witnesses all testified that Trotter was unusually aggressive on the day he was fired. A review by plant manager (and Smith's own boss) Terry Stoddard found that the firing was appropriate and comported with company policy.

## A.

At trial and on appeal, Trotter has attempted to cast doubt on BPB's alleged grounds for his termination by proof of statements allegedly made by Smith that might evince racial bias. Firstly, Trotter alleges that Smith referred to the operator of a secondary saw, Miguel Collins, as a "straw boss." Smith testified in his deposition that he used the term to refer to his floor lead persons or operators.[4] Secondly, Trotter alleges that when he ran into Smith over a year later at a local restaurant, he overheard Smith mumble the "'n'-word" in passing. Smith denies having made such a remark.

In determining whether there is a genuine issue of material fact, evidence and inferences must be drawn in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). Therefore, let us assume *arguendo* that both of these incidents did occur and that Smith meant "straw boss" to be a racial slur. Even reading the evidence in a light most favorable to Trotter, these offensive remarks constitute nothing more than "stray remarks" and cannot be considered sufficient to meet Trotter's burden of production, nor do they create a genuine issue of fact that merits a jury trial.

---

[4] The term "straw boss" is defined as an "assistant to a foreman in charge of supervising and expediting the work of a small gang of workmen." WEBSTER'S NEW INT'L DICTIONARY, 2257 (3d ed. 1986). Trotter contends, however, that a "straw boss" was often used historically to refer to a black foreman who oversaw field slaves. Trotter offers no evidence, other than his subjective belief, to suggest that Smith meant the term to be derogatory or racist.

For a comment in the workplace to provide sufficient evidence for discrimination, it must be "(1) related [to the protected class of persons of which plaintiff is a member]; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999). Neither of Smith's comments satisfies that standard.

Smith's use of the term "straw boss" was never made in connection with Trotter, and it was not made in a manner that related to Smith's decision to terminate Trotter. Furthermore, Trotter offers no evidence as to when the comment was made, but only that it was made. Smith's use of the "n-word," although highly offensive and never appropriate, also constitutes nothing more than a stray remark, because it occurred well over a year after Trotter's termination (and therefore cannot be said to be proximate in time), nor was the comment made in the work place or was in any way related to the employment decision at issue. Comments that are "vague and remote in time" are insufficient to establish discrimination. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).

## B.

On appeal, Trotter contends that similarly-situated white employees were not fired after engaging in a fight. This favorable treatment, Trotter contends, presents a genuine issue of material fact regarding whether BPB's cause for termination was pretext. Trotter did not bring up this theory in the district court, so we cannot consider it. *See Nissho-Iwai Am. Corp v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

Even if we were to consider Trotter's the-

ory, however, the evidence he submits still fails to satisfy his burden of production under *McDonnell Douglas*. To establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical circumstances." *Okoye*, 245 F.3d at 514. Trotter fails to establish that the white employees who engaged in fights at work were in "nearly identical circumstances," because theySSby way of contrastSSwere fighting *other employees*.

Trotter, on the other hand, got into fisticuffs with his boss, a member of management. Moreover, that was the second fight in which Trotter had engaged that very day. BPB maintains that Trotter was fired for insubordination, part of which included mouthing off to Smith and fighting with him. Fighting with other employees does not constitute insubordination, and we cannot say that Trotter's situation was similar enough to the others' to cast doubt on BPB's grounds for termination.

AFFIRMED.